IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CHALPIN REALTY SC, LLC, | ) | Civil Action No: 4:22-cv-02651-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | **JERSAM REALTY, INC.'S** |
| vs. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **ITS MOTION FOR SUMMARY** |
| JERSAM REALTY, INC., | ) | **JUDGMENT** |
| | ) | |
| Defendant. | ) | |

Pursuant to Local Rules 7.04 and 7.05, Counterclaimant/Defendant, Jersam Realty, Inc. submits this Memorandum in Support of its Motion for Summary Judgment (Dkt. No. 17).

## INTRODUCTION

This case involves a real estate contract ("Contract") for the sale of 1410 North Ocean Boulevard, Myrtle Beach, South Carolina ("Property"). The Property was marketed for sale as a multi-tenant retail project, with the Property to be sold along with the tenants and leases in place. Counterclaimant/Defendant, Jersam Realty, Inc. ("Buyer") respectfully requests that the Court rule as a matter of law that Buyer properly terminated said Contract because Plaintiff, Chalpin Realty, SC, LLC ("Seller"), could not meet its obligation to restate the representations and warranties made in Section 4 of the Contract as of the closing date (June 16, 2022) due to one of Seller's tenants failing to pay rent and said tenant's subsequent abandonment of the leased premises. The controlling sentence of the Contract that Plaintiff as Seller breached states:

> The representations and warranties of Seller set forth in this Section 4 are made as of the date of the Contract **and are and shall be restated as of the Closing Date**.

1

(Dkt. No. 1-1, Contract, at p. 11 of 62) (emphasis added). Despite this provision, commonly referred to as a "bring down provision,"[1] Plaintiff argues that it representations and warranties need only be true as of the "Effective Date," May 13, 2022, which is the date the Contract was signed. (Dkt. No. 1, Compl., at ¶ 55). The exact argument Plaintiff makes here was properly rejected by another Court because (1) Plaintiff's construction of the bring-down provision would render the "as of the closing date" language a "nullity,"; and (2) "Plaintiffs' reading of the Bring-down Provision undermines the well-understood function of that condition, which is to 'protect[ ] each party from the other's business changing or additional, unforeseen risks arising prior to closing.' *Dermatology Assocs. of San Antonio v. Oliver St. Dermatology Mgmt. LLC*, No. CV 2017-0665-KSJM, 2020 WL 4581674, at *29 (Del. Ch. Aug. 10, 2020); (quoting Lou R. Kling, Eileen T. Nugent & Brandon A. Van Dyke, *Negotiated Acquisitions of Companies, Subsidiaries and Divisions* § 14.02[1], at 14-9 (2020 ed.)). In rejecting the very argument Plaintiff makes here, the Court held "[i]f the Bring-down Provision need only be true as of the signing, then it would not achieve its purpose of protecting against business changes that arise between the signing and closing." *Id.*

## PROCEDURAL HISTORY

Plaintiff filed this action and Defendant counterclaimed with both parties asserting causes of action for breach of contract and declaratory judgment. This matter comes before the Court pursuant to the Court's Consent Scheduling Order, where the parties agreed "the action should be decided as a consequence of motions for summary judgment pursuant to Fed. R. Civ. P. 56." (Dkt. No. 15 at ¶ 3). Because this case should be decided as a matter of law based on the plain language of a contract,

---

[1] "A bring down is a provision requiring the representations and warranties that were made at signing to be made again on the closing date." Item 4-382-3286 (Westlaw Practical Law Glossary, 2022), https://us.practicallaw.thomsonreuters.com/4-382-3286; *see also* Bring-down Provision, Black's Law Dictionary (11th ed. 2019) ("A "bring-down provision" is defined as "[a] contractual covenant that all of a party's representations and warranties were true when the contract was executed and will be true on the closing date.").

2

the parties also stipulated that no discovery is "believed to be necessary in this action." (Dkt. No. 15 at ¶ 1). The parties' respective causes of action will be determined based on how the Court construes the Contract's bring-down provision.

## **STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, the Contract is "governed by, and construed in accordance with, the law of the State of South Carolina." (Dkt. No. 1-1, Contract at § 20.03, p. 29 of 62). Under South Carolina law, "construing a contract is a question of law for the court." *Crenshaw v. Erskine Coll.*, 432 S.C. 1, 26, 850 S.E.2d 1, 14 (2020), *reh'g denied* (Nov. 30, 2020). "[W]ritten contracts are to be construed by the Court" *unless* the "contract is ambiguous." *Cafe Assocs., Ltd. v. Gerngross*, 305 S.C. 6, 9, 406 S.E.2d 162, 164 (1991). Actions on a contract must be based on the terms of the contract. *Maybank v. BB&T Corp.*, 416 S.C. 541, 573, 787 S.E.2d 498, 515 (2016). "Additional principles of South Carolina contract interpretation dictate that contracts 'will be interpreted so as to give effect to all of their provisions, if practical.'" *Mears Grp., Inc. v. Kiawah Island Util., Inc.*, 372 F. Supp. 3d 363, 373 (D.S.C. 2019) (quoting *Reyhani v. Stone Creek Cove Condominium II Horizontal Property Regime*, 329 S.C. 206, 494 S.E.2d 465, 468 (S.C. Ct. App. 1997)). "If a contract is unambiguous, a court must enforce it 'according to its terms regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully.'" *Id.* (quoting *S.C. Dep't of Transp. v. M & T Enterprises of Mt. Pleasant, LLC*, 379 S.C. 645, 667 S.E.2d 7, 13 (S.C. Ct. App. 2008)). "[A]n interpretation that gives meaning to all parts of the contract is preferable to one which renders provisions in the contract meaningless or superfluous." *Stevens Aviation, Inc. v. DynCorp Int'l LLC*, 407 S.C. 407, 417, 756 S.E.2d 148, 153 (2014); *see also,* Dermatology *Assocs. of San Antonio v. Oliver St. Dermatology Mgmt. LLC*, No. CV 2017-0665-KSJM, 2020 WL 4581674, at *29 (Del. Ch.

Aug. 10, 2020) (rejecting the same arguments Plaintiff makes here, because that construction of the bring-down provision would render the "as of the closing date" language a "nullity," and the "law rejects interpretations of contracts that render provisions null and void.").

## FACTS

At all pertinent times, Plaintiff as Seller owned the Property, a commercial property located at 1410 North Ocean Boulevard, Myrtle Beach, South Carolina. The Property was marketed for sale as a multi-tenant retail project, with the Property to be sold along with the tenants and leases in place such that the existing leases would be assigned to Buyer at closing. Monthly base rent from six existing tenants at the time the Contract was executed (including Epic Arcades SC, LLC) totaled $93,285.33 (this does not account for the additional monthly rents totaling $38,749.94 at the time the Contract was executed). As set forth in Schedule E to the Contract, Epic Arcades SC, LLC ("Tenant Arcade") was one of Seller's largest tenants. (Dkt. No. 1-1, Contract, Schedule E, p. 53 of 62). An Image of Schedule E from the Contract is depicted below:

| Tenant | Current Monthly Rent | Current Monthly Additional Rent | Security Deposit |
|---|---|---|---|
| Epic Arcades SC LLC (Arcade) | $30,345.00 | $13,318.63 | $0.00 |
| MB Oceanfront Entertainment (Banditos) | $16,083.75 | $8,721.23 | $0.00 |
| Ani Creation, LLC (General Store) | $9,362.50 | $3,718.84 | $9,362.50 |
| MB National, LLC (Starbucks) | $3,052.08 | $1,647.40 | $0.00 |
| First-Citizens Bank & Trust Company (ATM) | $800.00<br>**This Tenant Pre-paid all Rent for 2022. Adjustment to be made at Closing** | N/A | $0.00 |
| Tin Roof Acquisition Company, LLC (Tin Roof) | $33,642.00 | $11,343.84 | $39,189.00 |

4

The Contract for the Property was fully executed by the parties on May 13, 2022. The Contract was attached as Exhibit A to Plaintiff's Complaint. (Dkt. No. 1-1, Contract). The controlling sentence in the Contract that Plaintiff as Seller breached is contained in the last sentence of Section 4 and states:

> The representations and warranties of Seller set forth in this Section 4 are made as of the date of this Contract ==and are and shall be restated as of the Closing Date.==

(Dkt. No. 1-1, Contract, at p. 11 of 62). In Section 4 of the Contract, entitled "Representations of Seller," Plaintiff as Seller "represent[ed] and covenant[ed]" to Buyer regarding the status of Plaintiff's leases and tenants. *Id.* at p. 8 of 62. Plaintiff as Seller agreed that the Representations of Seller "shall be restated as of the Closing Date," which the parties agreed to schedule on June 16, 2022. *Id.* at p. 11 of 62; Dkt. No 1, Complaint at ¶ 43. Specifically, in Section 4.02(b) of the Contract, Plaintiff represented that "all of the Leases are in full force and effect." (Dkt. No. 1-1, Contract, at p. 8 of 62). In Section 4.02(k) of the Contract, Plaintiff represented that "to Seller's actual knowledge, no tenant who is in actual possession as of the Effective Date under any Lease is in breach of any of its obligations under said Lease, and there exists no conditions which, with the giving of notice or the passage of time would constitute a breach by any tenant of its obligations under any Lease." *Id.* at p. 9 of 62.

On June 14, 2022, two days before the June 16, 2022 closing date, Plaintiff's counsel sent an email to counsel for the Buyer indicating that Tenant Arcade (who was in actual possession as of the Effective Date of the Contract) had failed to pay rent for June 2022. Later that morning, Plaintiff's counsel sent another email to counsel for Buyer, which is depicted below and was attached as Exhibit A to Buyer's Counterclaim (Dkt. No. 7-1), informing Buyer that Tenant Arcade was vacating the premises:

5

Ryan Miller <RMiller@kishnerlegal.com>
FW: Epic Arcade Moving Out of The BLVD

To: ☐ James Bruno; ☐ Stoney, Jane
Cc: ☐ Nicholas Cherami; ☐ Bryan Kishner; ☐ Brady, Elizabeth J.; ☐ McGee, Jenna K.; ☐ Adamson, Jenny C.; ☐ Loring, Shelia J.

You forwarded this message on 6/14/2022 3:48 PM.

[Attachments: 20220614_092625.jpg, 20220614_092522.jpg, 20220614_092517.jpg, 20220614_092220.jpg, 20220614_092213.jpg, 20220614_092124.jpg, Bring Down Certificate - Seller.docx]

Jim/Jane:

We literally just learned as of moments ago of the below and attached.

As such, my client can no longer restate the representations of Section 4.02 as it pertains to the Arcade as they have failed to pay June, 2022 Rent or Additional Rent and now appear to be abandoning/surrendering the Premises.

I didn't see that you requested a Bring Down Certificate on the Reps in the Contract but I will get my client to sign the attached (subject to any comments you may have). Also did you want a Notice to Tenants signed? If so, please send one over and I will get my client to sign that as well.

Thanks!

Ryan O. Miller, Esq.

Kishner | Miller | Himes P.C.

40 Fulton Street, 12th Floor
New York, New York 10038

---

**From:** Gordon Hirsch <gordon@keystonecommercial.com>
**Sent:** Tuesday, June 14, 2022 9:36 AM
**To:** Ryan Miller <RMiller@kishnerlegal.com>; chalpinm <chalpinm@aol.com>; John Corritore <john@corritore.com>; Ryan E <ryane@keystonecommercial.com>; Rusty Helm <rusty@keystonecommercial.com>; Keystone Management <mgmt@keystonecommercial.com>
**Subject:** Epic Arcade Moving Out of The BLVD

Marc:

I am at Epic Arcade and they are moving everything out of The BLVD. The moving crew arrived last night, is wrapping all machines, and moving outside for truck pickup. I'm told Frank Pracucowski is here and supervising but have not seen him.

I walked through and took pictures of everything to document condition of the premises and the moving activity. Attached are a few of those pics.

Gordon

6

When Plaintiff's counsel forwarded the email regarding Tenant Arcade's abandonment of the premises, he acknowledged that "my client can no longer restate the representations of Section 4.02 as it pertains to the Arcade as they have failed to pay June, 2022 Rent or Additional Rent and now appear to be abandoning/surrendering the premises." (Dkt. No. 7-1, Email from Plaintiff's Counsel). By Plaintiff counsel's own admission his client could not fulfill its obligations under the Contract where Plaintiff agreed that "[t]he representations and warranties of Seller set forth in this Section 4 are made as of the date of this Contract **and are and shall be restated as of the Closing Date**." (Dkt. No. 1-1, Contract, at p. 11 of 62) (emphasis added).[2]

Defaults by Seller under the Contract are governed by Section 13.04, which reads as follows:

> §13.04  Seller Default. Notwithstanding anything to the contrary contained herein, if Seller shall default in the performance of Seller's obligations under this Contract and such default is not cured within the earlier to occur of (i) five (5) days of Seller's receipt of written notice from Purchaser demanding same; or (ii) the Closing Date, Purchaser's sole and exclusive remedy shall be, and Purchaser shall be entitled, to either (a) terminate this Contract and receive (i) a return of the then Downpayment (but only to the extent that the Downpayment has actually be paid by Purchaser to Escrowee, plus the interest thereon), and (ii) reimbursement for Purchaser's Actual Costs Incurred subsequent to May 1, 2022, and the Seller shall be released from any further liability to Purchaser hereunder, except for those obligations and liabilities that are expressly stated to survive termination of this Contract, or, in the alternative, (b) seek specific performance of Seller's obligations hereunder, provided that any such action for specific performance must be commenced within sixty 60) days after such default. Except as otherwise provided in this Contract, in no event whatsoever shall Seller be liable to Purchaser for any damages of any kind whatsoever (and this sentence shall survive the Closing and/or termination of this Contract). As used herein, "Actual Costs Incurred" shall mean all actual out of pocket costs of due diligence and all expenses actually incurred or obligated for by Purchaser in an effort to consummate the transaction contemplated herein, to include, without limitation, appraisal costs, survey costs, costs of inspections and reports, title examination, and reasonable legal fees up to a maximum amount of $20,000.

---

[2] Section 9.05 of the Contract also required Plaintiff to "promptly give written notice to Purchaser of the occurrence of any event when known to Seller affects the truth or accuracy of any representations or warranties made or to be made by Seller under or pursuant to this Contract or amounts to any material change in any condition with respect to the Premises." (Dkt. No. 1-1, Contract, at p. 17 of 62). Plaintiff failed to comply with this provision by waiting 13 days to notify Buyer that Tenant Arcade had failed to pay its rent for the month of June, 2022, which was due on June 1, 2022. At the time of Tenant Arcade's failure to pay rent, due diligence had not yet expired. Conveniently, Seller elected to wait until after due diligence expired before notifying Buyer.

(Dkt. No. 1-1, Contract, at p. 24 of 62). By its own admission, Seller defaulted under the Contract because it could no longer restate the representations and warranties of Section 4 as it pertained to Tenant Arcade, which failed to pay June, 2022 Rent and Additional Rent and abandoned the premises. (Dkt. No. 7-1, Email from Plaintiff's Counsel).

As is evidenced by Schedule E to the Contract, these were not immaterial breaches/defaults. Tenant Arcade was one of Seller's two largest tenants, and Tenant Arcade's failure to pay its rent and abandonment of Seller's premises on the eve of closing created a considerable loss of revenue that went to the heart of the economics of the deal. Specifically, as evidenced by Schedule E to the Contract, Tenant Arcade's rent made up 32.52%, or over a third, of the $93,285.33 in monthly rents. The next largest tenant's rent was $16,083.75, with the rents of the remaining 3 tenants decreasing dramatically and ultimately down to $800.00 per month (Dkt. No. 1-1, Contract, Schedule E, p. 53 of 62). Thus, this was not an immaterial breach/default.[3]

As such, on June 15, 2022, Buyer sent a Notice of Default and requested that Seller cure its defaults under the Contract. The Notice of Default was attached as Exhibit B to Buyer's Counterclaim. (Dkt. No. 7-2, Notice of Default). Seller failed to cure its default prior to closing. *Bank of New York Mellon Tr. Co., Nat. Ass'n v. Morgan Stanley Mortg. Cap., Inc.*, No. 11 CIV. 0505 CM GWG, 2013 WL 3146824, at *13 (S.D.N.Y. June 19, 2013) ("Obviously, since the representation and warranty had been breached . . . there was no way to cure it."). Following

---

[3] Importantly, the bring down provision in this case did not have a materiality qualifier. (Dkt. No. 1-1, Contract, at p. 11 of 62) ("[t]he representations and warranties of Seller set forth in this Section 4 are made as of the date of this Contract and are and shall be restated as of the Closing Date."). A seller can protect itself from immaterial changes concerning representations and warranties by including a materiality qualifier. *See e.g., Dermatology Assocs.*, 2020 WL 4581674, at *9 (requiring that the representations and warranties be restated "in all material respects as of the Closing Date"). Here, the Seller did not require a materiality qualifier in the bring down provision. However, even if it did, Tenant Arcade's failure to pay rent and abandonment of Seller's premises had a material financial impact to the deal as Tenant Arcade's rent made up 32.52%, or over a third, of the $93,285.33 in monthly rents.

8

Plaintiff's failure to cure its default by the deadline set forth for cure in Section 13.04 of the Contract, Buyer sent a Notice of Termination on June 22, 2022, which was attached as Exhibit C to Buyer's Counterclaim. (Dkt. No. 7-3, Notice of Termination).

The Contract called for Buyer to make an initial earnest money deposit of $500,000 upon execution (the "Initial Downpayment"). (Dkt. No. 1-1, Contract, Schedule C, p. 50 of 62). Pursuant to the Contract, Buyer subsequently made an additional earnest money deposit of another $500,000 (the "2nd Downpayment", and together with the Initial Downpayment, the "Downpayment"), for a total Downpayment of $1,000,000. *Id.* On account of Seller's Default and pursuant to Section 13.04 of the Contract depicted above, Seller was required to authorize the return the $1,000,000 Downpayment to Buyer along with paying Buyer's Actual Costs Incurred, which are capped under the Contract at $20,000. Section 13.04 of the Contract provides in pertinent part:

> "Notwithstanding anything to the contrary contained herein, *if Seller shall default in the performance of Seller's obligations under this Contract and such default is not cured within the earlier to occur of (i) five (5) days of Seller's receipt of written notice from Purchaser demanding same; or (ii) the Closing Date,* Purchaser's sole and exclusive remedy shall be, and Purchaser shall be entitled, to either *(a) terminate this Contract and receive (i) a return of the then Downpayment (but only to the extent that the Downpayment has actually be paid by Purchaser to Escrowee, plus the interest thereon), and (ii) reimbursement for Purchaser's Actual Costs Incurred subsequent to May 1, 2022, and the Seller shall be released from any further liability to Purchaser hereunder, except for those obligations and liabilities that are expressly stated to survive termination of this Contract . . . As used herein, "Actual Costs Incurred" shall mean all actual out of pocket costs of due diligence and all expenses actually incurred or obligated for by Purchaser in an effort to consummate the transaction contemplated herein, to include, without limitation, appraisal costs, survey costs, costs of inspections and reports, title examination, and reasonable legal fees up to a maximum amount of $20,000.*"

(Dkt. No. 1-1, Contract, at p. 24 of 62). (emphasis added). Despite Plaintiff's own admissions that it could not meet its obligations to restate the representations and warranties made in Section 4 "as of the Closing Date" and despite numerous written requests from Buyer, Plaintiff objected to the return of Buyer's $1,000,000 Downpayment and refused to pay Buyer's Actual Costs Incurred. Instead,

9

Plaintiff elected to file this ill-advised action.[4]  Section 13.06 of the Contract contains a fee-shifting provision, which states "[a]nything contained herein to the contrary notwithstanding, in the event that any party is required to resort to litigation to enforce its rights under this Contract, Seller and Purchaser agree that any judgment awarded to the prevailing party shall include all litigation expenses of the prevailing party, including (without limitation) actual attorneys' fees and court costs." (Dkt. No. 1-1, Contract, at p. 25 of 62).

## LEGAL ANALYSIS/ARGUMENT

While Plaintiff's Complaint is filled with many irrelevant dates and unnecessary facts in an attempt to muddy the water, this Case centers on the Contract's bring-down provision, which states, "[t]he representations and warranties of Seller set forth in this Section 4 are made as of the date of this Contract **and are and shall be restated as of the Closing Date.**" (Dkt. No. 1-1, Contract, at p. 11 of 62) (emphasis added).

"A bring down is a provision requiring the representations and warranties that were made at signing to be made again on the closing date." Item 4-382-3286 (Westlaw Practical Law Glossary, 2022), https://us.practicallaw.thomsonreuters.com/4-382-3286; *see also* Bring-down Provision, Black's Law Dictionary (11th ed. 2019) ("A "bring-down provision" is defined as "[a] contractual covenant that all of a party's representations and warranties were true when the contract was executed and will be true on the closing date."). "'[R]epresentations and warranties are statements of fact as of the date of the execution of the acquisition agreement, and the truthfulness of the representations and warranties as of both the date of execution and [] the date of the closing is generally a condition to the closing.'" *W. Filter Corp. v. Argan, Inc.*, 540 F.3d 947, 952 (9th Cir.

---

[4] Plaintiff has a proclivity towards litigation.  In fact, in addition to suing the Buyer in this case, Plaintiff also sued the seller after Plaintiff purchased the Property. *See Chalpin Realty SC, LLC v. Patrick Marino, et al.*, Civil Action No. 2020-CP-26-05510, Court of Common Pleas, State of South Carolina, County of Horry.

10

2008) (quoting Samuel C. Thompson, Jr., *Business Planning for Mergers and Acquisitions* 780 (Carolina Academic Press 2001) (1997). "In other words, the representations and warranties serve as a safety net for the seller and buyer." *Id.* "If, prior to closing, either the seller or buyer discovers that a representation or warranty made by the other party is not true, they have grounds for backing out of the deal." *Id.*

Here, the controlling sentence in the Contract that Plaintiff as Seller breached is contained in the last sentence of Section 4 and states:

> The representations and warranties of Seller set forth in this Section 4 are made as of the date of this Contract and are and shall be restated as of the Closing Date.

(Dkt. No. 1-1, Contract, at p. 11 of 62). In Section 4 of the Contract, entitled "Representations of Seller," Plaintiff as Seller "represent[ed] and covenant[ed]" to Buyer regarding the status of Plaintiff's leases and tenants. *Id.* at p. 8 of 62. Plaintiff as Seller agreed that the Representations of Seller "shall be restated as of the Closing Date," which the parties agreed to schedule on June 16, 2022. *Id.* at p. 11 of 62; Dkt. No 1, Complaint at ¶ 43. Specifically, in Section 4.02(b) of the Contract, Plaintiff represented that "all of the Leases are in full force and effect." (Dkt. No. 1-1, Contract, at p. 8 of 62). In Section 4.02(k) of the Contract, Plaintiff represented that "to Seller's actual knowledge, no tenant who is in actual possession as of the Effective Date under any Lease is in breach of any of its obligations under said Lease, and there exists no conditions which, with the giving of notice or the passage of time would constitute a breach by any tenant of its obligations under any Lease." *Id.* at p. 9 of 62.

When Plaintiff's counsel forwarded the email regarding Tenant Arcade's failure to pay rent and abandonment of the premises, he acknowledged that "my client can no longer restate the representations of Section 4.02 as it pertains to the Arcade as they have failed to pay June, 2022 Rent or Additional Rent and now appear to be abandoning/surrendering the premises." (Dkt. No. 7-1, Email

11

from Plaintiff's Counsel).  By Plaintiff counsel's own admission his client could not fulfill its obligations under the Contract where Plaintiff agreed that "[t]he representations and warranties of Seller set forth in this Section 4 are made as of the date of this Contract **and are and shall be restated as of the Closing Date**." (Dkt. No. 1-1, Contract, at p. 11 of 62) (emphasis added).

Despite Plaintiff counsel's own admission, Plaintiff now argues that its representations and warranties need only be true as of the "Effective Date," May 13, 2022, which is the date the Contract was signed.  (Dkt. No. 1, Compl., at ¶ 55).  This exact argument was properly rejected by another Court in *Dermatology Assocs. of San Antonio v. Oliver St. Dermatology Mgmt. LLC*, No. CV 2017-0665-KSJM, 2020 WL 4581674, at *29 (Del. Ch. Aug. 10, 2020).  In *Dermatology Assocs.*, the Court rejected the same argument Plaintiff makes here because Plaintiff's construction of the bring-down provision would render the "as of the closing date" language a "nullity," and "Delaware law rejects interpretations of contracts that render provisions null and void." *Id.* Here, Plaintiff's construction of the bring-down provision would also render the subject Contract's "as of the closing date" language a nullity, and under South Carolina law, which governs the construction of this Contract, "an interpretation that gives meaning to all parts of the contract is preferable to one which renders provisions in the contract meaningless or superfluous." *Stevens Aviation, Inc. v. DynCorp Int'l LLC*, 407 S.C. 407, 417, 756 S.E.2d 148, 153 (2014). In *Dermatology Assocs.*, the Court also correctly noted that "Plaintiffs' reading of the Bring-down Provision undermines the well-understood function of that condition, which is to 'protect[ ] each party from the other's business changing or additional, unforeseen risks arising prior to closing.' *Dermatology Assocs.*, 2020 WL 4581674, at *29 (quoting Lou R. Kling, Eileen T. Nugent & Brandon A. Van Dyke, *Negotiated Acquisitions of Companies, Subsidiaries and Divisions* § 14.02[1], at 14-9 (2020 ed.)). "If the Bring-down Provision need only be true as of the signing, then it would not achieve its purpose of protecting against business changes that arise between the signing and closing." *Id.*

## **CONCLUSION**

Based on the foregoing, Counterclaimant/Defendant, Jersam Realty, Inc. respectfully requests that the Court issue an Order granting Jersam summary judgment on its Counterclaims, awarding the relief sought therein, and dismissing Plaintiff's Complaint. Specifically, Jersam Realty, Inc. respectfully requests that the Court rule as a matter of law that (1) Defendant/Buyer properly terminated the Contract because Plaintiff, Chalpin Realty, SC, LLC, could not meet its obligation to restate the representations and warranties made in Section 4 of the Contract "as of the closing date" (June 16, 2022) due to one of Plaintiff/Seller's tenants failing to pay rent and the tenant's abandonment of Plaintiff/Seller's premises; and (2) as a result and pursuant to the Contract, Defendant/Buyer is entitled to the return of its $1,000,000.00 Downpayment (plus Plaintiff's payment of statutory interest of 7.25% from June 23, 2022), $20,000.00 in Actual Costs Incurred prior to the scheduled closing, and all litigation expenses, including actual attorney's fees and court costs incurred in this action. In the event the Court rules in favor of Counterclaimant/Defendant, Jersam Realty, Inc., it respectfully requests leave of Court to submit an affidavit addressing the Actual Costs Incurred, its litigation expenses (including actual attorney's fees and court costs incurred in this action), and a statutory interest calculation for the Court's consideration.

Respectfully Submitted,

**HAYNSWORTH SINKLER BOYD, P.A.**
*s/Stafford J. McQuillin III*
Stafford J. McQuillin III (Fed ID #10715)
mmcquillin@hsblawfirm.com

**AND**

**PARKER NELSON & ASSOCIATES**
Theodore Parker III (Fed ID #12224)
Tparker@pnalaw.net

*Attorneys for Jersam Realty, Inc.*

December 22, 2022