# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | | |
|---|---|---|
| CHALPIN REALTY SC, LLC, | ) | Civil Action No: 4:22-cv-02651-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | **JERSAM REALTY, INC.'S** |
| vs. | ) | **RESPONSE IN OPPOSITION TO** |
| | ) | **PLAINTIFF'S MOTION FOR** |
| JERSAM REALTY, INC., | ) | **SUMMARY JUDGMENT** |
| | ) | |
| Defendant. | ) | |

Pursuant to Local Rule 7.06, Counterclaimant/Defendant, Jersam Realty, Inc. submits this Response in Opposition to Plaintiff's Motion for Summary Judgment and Memorandum in Support (Dkt. Nos. 16 and 18) ("Motion for Summary Judgment"). In accordance with the Court's Consent Scheduling Order (Dkt. No. 15), Counterclaimant/Defendant, Jersam Realty, Inc. ("Buyer") filed a cross Motion for Summary Judgment and Memorandum in Support (Dkt. No. 17-1). Counterclaimant/Defendant, incorporates by reference its Memorandum in Support of Summary Judgment (Dkt. No. 17-1), which addresses the factual background/procedural history and addresses many of the issues raised in Plaintiff's Motion for Summary Judgment. For the reasons set forth herein and in Counterclaimant/Defendant's Memorandum in Support of Summary Judgement (Dkt. No. 17-1), Plaintiff's Motion for Summary Judgment should be denied.

## INTRODUCTION

This case involves a real estate contract ("Contract") for the sale of 1410 North Ocean Boulevard, Myrtle Beach, South Carolina ("Property"). The Property was marketed for sale as a multi-tenant retail project, with the Property to be sold along with the tenants and leases in place.

While Plaintiff's Motion for Summary Judgment is filled with many irrelevant and unnecessary facts in an attempt to muddy the water and mislead the Court, this Case centers on the

Contract's bring-down provision, which states, "[t]he representations and warranties of Seller set forth in this Section 4 are made as of the date of this Contract and **are and shall be restated as of the Closing Date.**" (Dkt. No. 1-1, Contract, at p. 11 of 62) (emphasis added).

"A bring down is a provision requiring the representations and warranties that were made at signing to be made again on the closing date." Item 4-382-3286 (Westlaw Practical Law Glossary, 2022), https://us.practicallaw.thomsonreuters.com/4-382-3286; *see also* Bring-down Provision, Black's Law Dictionary (11th ed. 2019) ("A "bring-down provision" is defined as "[a] contractual covenant that all of a party's representations and warranties were true when the contract was executed and will be true on the closing date.").[1] "'[R]epresentations and warranties are statements of fact as of the date of the execution of the acquisition agreement, and the truthfulness of the representations and warranties as of both the date of execution and [] the date of the closing is generally a condition to the closing.'" *W. Filter Corp. v. Argan, Inc.*, 540 F.3d 947, 952 (9th Cir. 2008) (quoting Samuel C. Thompson, Jr., *Business Planning for Mergers and Acquisitions* 780 (Carolina Academic Press 2001) (1997). "In other words, the representations and warranties serve as a safety net for the seller and buyer." *Id.* "If, prior to closing, either the seller or buyer discovers that a representation or warranty made by the other party is not true, they have grounds for backing out of the deal." *Id.*

Here, the controlling sentence in the Contract that Plaintiff Chalpin Realty, SC, LLC ("Seller") breached is contained in the last sentence of Section 4 and states:

> The representations and warranties of Seller set forth in this Section 4 are made as of the date of this Contract ==and are and shall be restated as of the Closing Date.==

---

[1] A bring down provision can be automatic or it can provide for a separate certificate to be delivered at closing. The contract at issue did not require a separate certificate to be delivered at closing and instead provided for the restatement of the representations and warranties to be automatic. (Dkt. No. 1-1, Contract, Section 4) ("are and shall be restated as of the closing date").

(Dkt. No. 1-1, Contract, at p. 11 of 62). In Section 4 of the Contract, entitled "Representations of Seller," Plaintiff as Seller "represent[ed] and covenant[ed]" to Buyer regarding the status of Plaintiff's leases and tenants. *Id.* at p. 8 of 62. Plaintiff as Seller agreed that the Representations of Seller "shall be restated as of the Closing Date," which the parties agreed to schedule on June 16, 2022. *Id.* at p. 11 of 62; Dkt. No 1, Complaint at ¶ 43. Specifically, in Section 4.02(b) of the Contract, Plaintiff represented that "all of the Leases are in full force and effect." (Dkt. No. 1-1, Contract, at p. 8 of 62). In Section 4.02(k) of the Contract, Plaintiff represented that "to Seller's actual knowledge, no tenant who is in actual possession as of the Effective Date under any Lease is in breach of any of its obligations under said Lease, and there exists no conditions which, with the giving of notice or the passage of time would constitute a breach by any tenant of its obligations under any Lease." *Id.* at p. 9 of 62.

On June 14, 2022, two days before the June 16, 2022 closing date, Plaintiff's counsel sent an email to counsel for the Buyer indicating that Epic Arcades SC, LLC[2] ("Tenant Arcade") (who was in actual possession as of the Effective Date of the Contract) had failed to pay rent for June 2022. Later that morning, Plaintiff's counsel sent another email to counsel for Buyer, which is attached as Exhibit A to Buyer's Counterclaim (Dkt. No. 7-1), informing Buyer that Tenant Arcade was vacating the premises. When Plaintiff's counsel forwarded the email regarding Tenant Arcade's failure to pay rent and abandonment of the premises, he acknowledged that "my client can no longer restate the representations of Section 4.02 as it pertains to the Arcade as they have failed to pay June, 2022 Rent or Additional Rent and now appear to be abandoning/surrendering the premises." (Dkt. No. 7-1, Email

---

[2] Tenant Arcade was one of Seller's two largest tenants. Specifically, as evidenced by Schedule E to the Contract, Tenant Arcade's rent made up 32.52%, or over a third, of the $93,285.33 in monthly rents. The next largest tenant's rent was $16,083.75, with the rents of the remaining 3 tenants decreasing dramatically and ultimately down to $800.00 per month (Dkt. No. 1-1, Contract, Schedule E, p. 53 of 62).

3

from Plaintiff's Counsel). By Plaintiff counsel's own admission, Plaintiff could not fulfill its obligations under the Contract where Plaintiff agreed that "[t]he representations and warranties of Seller set forth in this Section 4 are made as of the date of this Contract **and are and shall be restated as of the Closing Date.**" (Dkt. No. 1-1, Contract, at p. 11 of 62) (emphasis added). Additionally, in Plaintiff counsel's June 14, 2022 email (Dkt. No. 7-1), counsel attached a document, which further acknowledged his client could not restate the representations and warranties contained in Section 4 of the Contract as of the closing date.[3] The attachment to Plaintiff's email (Exh. A), stated the following:

> Seller hereby affirms that such Seller's representations and warranties as set forth in the Contract of Sale and Agreement remain true and correct in all material respects on the date hereof **except that Epic Arcades SC LLC has not paid Rent or Additional Rent for June, 2022 and, upon information and belief, is surrendering and abandoning the Premises as of June 14, 2022.**

(Exh. A) (emphasis added). Thus, Plaintiff's counsel's email and the attachment thereto both clearly demonstrate that Plaintiff was required to restate the representations and warranties made in Section 4 of the Contract as of the closing date, but Plaintiff was not able to do so in breach of the Contract.

Despite Plaintiff counsel's own admissions, Plaintiff now argues that its representations and warranties need only be true as of the "Effective Date," May 13, 2022, which is the date the Contract was signed. (Dkt. No. 18, Pltf. Memo in Supp., at p. 4) ("Plaintiff's obligation was to restate its representations to the Defendants when made on the Effective date"). While Plaintiff's Motion for Summary Judgment contains a variety of jumbled and misleading arguments, the arguments all have one common flaw – Plaintiff's construction of the Contract's bring down provision renders the "as of the closing date" language meaningless. This flawed construction has been rejected by another Court because this reading of the bring down provision would render the "as of the closing date" language

---

[3] The attachment to the June 14, 2022 email (Dkt. No. 7-1) is attached hereto as Exhibit A.

a "nullity," and "Delaware law rejects interpretations of contracts that render provisions null and void." *Dermatology Assocs. of San Antonio v. Oliver St. Dermatology Mgmt. LLC*, No. CV 2017-0665-KSJM, 2020 WL 4581674, at *29 (Del. Ch. Aug. 10, 2020) (construing a bring down provision and rejecting the same argument Plaintiff makes here). Here, Plaintiff's construction of the bring-down provision would also render the subject Contract's "as of the closing date" language a nullity, and under South Carolina law, which governs the construction of this Contract, "an interpretation that gives meaning to all parts of the contract is preferable to one which renders provisions in the contract meaningless or superfluous." *Stevens Aviation, Inc. v. DynCorp Int'l LLC*, 407 S.C. 407, 417, 756 S.E.2d 148, 153 (2014); *see also Mears Grp., Inc. v. Kiawah Island Util., Inc.*, 372 F. Supp. 3d 363, 373 (D.S.C. 2019) ("Additional principles of South Carolina contract interpretation dictate that contracts will be interpreted so as to give effect to all of their provisions, if practical."). In *Dermatology Assocs.*, the Court also correctly noted that "Plaintiffs' reading of the Bring-down Provision undermines the well-understood function of that condition, which is to 'protect[ ] each party from the other's business changing or additional, unforeseen risks arising prior to closing.'" *Dermatology Assocs.*, 2020 WL 4581674, at *29 (quoting Lou R. Kling, Eileen T. Nugent & Brandon A. Van Dyke, *Negotiated Acquisitions of Companies, Subsidiaries and Divisions* § 14.02[1], at 14-9 (2020 ed.)). "If the Bring-down Provision need only be true as of the signing, then it would not achieve its purpose of protecting against business changes that arise between the signing and closing." *Id.; see also W. Filter Corp.,* 540 F.3d at, 952 ("If, prior to closing, either the seller or buyer discovers that a representation or warranty made by the other party is not true, they have grounds for backing out of the deal.").

In fact, Plaintiff, as the purchaser of the Property, has separate litigation against the original seller and seeks to rescind the original purchase and sale agreement ("PSA") associated with the Property by alleging that the original seller breached the representations and warranties pertaining to

5

the tenant leases, that "Chalpin Realty relied on the PSA's provisions pertaining to the tenant leases, including [the seller's] representations and warranties," and that "[t]hese provisions were material to that decision to enter into the PSA." *Chalpin Realty SC, LLC v. Patrick Marino, et al.*, Complaint, at ¶¶ 86, 191, and 193, filed September 22, 2020, Civil Action No. 2020-CP-26-05510, Court of Common Pleas, State of South Carolina, County of Horry.  Plaintiff can't have it both ways.

## ARGUMENT

Plaintiff's Motion for Summary Judgment misstates and mischaracterizes the language of the Contract, case law, and general principals applicable to real estate law in an effort to mislead the Court. Despite Plaintiff's shotgun approach and variety of jumbled arguments, all of Plaintiff's arguments have one common flaw – they render the bring down provision's "as of the closing date" language meaningless.

 Plaintiff's construction is also illogical. Under Plaintiff's construction of the Contract, every single tenant in place at the time the Contract was signed could have stopped paying rent and vacated the premises before closing, and Buyer would still be required to close – despite Plaintiff's representations and warranties regarding the leases and tenants.

### I. Plaintiff misrepresents the Contract language by employing selective quoting in an effort to mislead the Court.

Because the Contract's plain language does not support Plaintiff's construction of the Contract, Plaintiff has resorted to selective quoting and misrepresentation.  Plaintiff argues that it "was not obligated to make any representation [sic] warranty or guaranty regarding the status of the leases and tenancies at closing" (Point I(B) of Plaintiff's Memo. in Support) and that "Defendant agreed to assume all risks associated with the leases and tenancies after due diligence and until closing" (Point I(C) of Plaintiff's Memo. in Support). To support these arguments, Plaintiff relies on Section 5.01(b)(v) of the Contract. Specifically, Plaintiff's Memorandum in Support of Summary Judgment states the following:

> Moreover, pursuant to Section 5.01(b)(v) of the Contract, Defendant agreed that Plaintiff "…has not made and does not make any representation, warranty, guaranty or statement as to…(v) the compliance of the Premises or the Leases and/or the Tenancies…***or any other matter regarding the status of the Leases***…" (emphasis added). *See* Ex. 3.

(Dkt. No. 18, Pltf. Memo in Support, pp. 10, 15). Plaintiff's memo then states that this "leads to the inevitable conclusion[4] that Defendant agreed to bear all the risk with respect to the Leases and Tenancies." *Id.* at pp. 10-11. However, Section 5.01(b)(v) does not say what Plaintiff has selectively quoted, and Plaintiff left off important and controlling language such as the first, operative part of the sentence, "Except as expressly provided in this Contract . . ." Pursuant to the undersigned's duty of candor towards the Court, Section 5.01(b) is depicted below to prevent Plaintiff's attempts to deceive the Court:

> (b) Purchaser acknowledges that, except as otherwise expressly provided herein, Seller has no obligation to alter, restore or repair the Premises in any manner whatsoever. Seller's only obligation with respect to the condition of the Premises shall be to deliver the Premises as herein provided. ==Except as expressly provided in this Contract, Seller has not made and does not make any representation, warranty, guaranty or statement as== to (i) the physical (including, without limitation, environmental) condition, state of title, income, expenses, real estate and other taxes, operation or other matters or things affecting the Premises, any Personal Premises inclusive of, without limitation, fixtures or appliances, utilities, equipment or furnishings at the Premises and included in this sale, if any, (ii) as to the physical condition of, suitability for development, zoning, or use to which the Premises may be put, (iii) environmental condition (including without limitation the presence of any hazardous or toxic materials), (iv) ==except as may be expressly provided otherwise in this Contract, the leases, rents, income or expenses of the Premises==, (v) the compliance of the Premises or the Leases and/or the Tenancies or use of the Premises or any portion thereof with the any law, rule, regulation, code or governmental order of any governmental authority, or ==any other matter regarding the status of the Leases or the rental being paid by the tenants thereunder, including, without limitation, whether or not same is subject to rent control, rent stabilization or other governmental rental regulation or legality of rent charges==, (vi) with respect to any filings including, without limitation, under rent control, rent stabilization or other rent regulation, made or required to be made on account of any current or prior lease, tenancy or occupancy at the Premises; and (vii) any litigation, actions, investigations, proceedings, or orders, including any of foregoing at, before or by any governmental authority or agency, relating to or arising out of the Leases at the Premises, or otherwise affecting or relating to the Premises; or the status or outcome of any of the foregoing.

---

[4] The only inevitable conclusion is that Plaintiff blatantly attempted to mislead the Court.

(Dkt. No. 1-1, Contract, Section 5.01(b)). A plain reading of this provision demonstrates that Section 5.01(b) does not say what Plaintiff represented. The "[e]xcept as expressly provided in this Contract" language, which Plaintiff failed to mention to the Court, eviscerates Plaintiff's primary arguments. The Contract expressly provided Seller's representations and warranties regarding the leases and tenancies. Specifically, in Section 4 of the Contract, entitled "Representations of Seller," Plaintiff as Seller "represent[ed] and covenant[ed]" to Buyer regarding the status of Plaintiff's leases and tenants. *Id.* at p. 8 of 62. Plaintiff as Seller agreed that the Representations of Seller "are and shall be restated as of the Closing Date," which the parties agreed to schedule on June 16, 2022. *Id.* at p. 11 of 62; Dkt. No 1, Complaint at ¶ 43. Specifically, in Section 4.02(b) of the Contract, Plaintiff represented that "all of the Leases are in full force and effect." (Dkt. No. 1-1, Contract, at p. 8 of 62). In Section 4.02(k) of the Contract, Plaintiff represented that "to Seller's actual knowledge, no tenant who is in actual possession as of the Effective Date under any Lease is in breach of any of its obligations under said Lease, and there exists no conditions which, with the giving of notice or the passage of time would constitute a breach by any tenant of its obligations under any Lease." *Id.* at p. 9 of 62. Importantly, the Contract expressly provided:

> The representations and warranties of Seller set forth in this <u>Section 4</u> are made as of the date of this Contract ==and are and shall be restated as of the Closing Date.==

(Dkt. No. 1-1, Contract, at p. 11 of 62). Plaintiff also argues that because due diligence had been completed as of the June 7, 2022 Reinstatement (Dkt. No. 18-9), it was no longer required to restate the representations and warranties contained in Section 4 "as of the closing date." This is simply incorrect based on Paragraph 7 of the Reinstatement, which states "All other Provisions of the Purchase and Sale Agreement remain in full force and effect." (Reinstatement, Dkt. No. 18-9). Importantly, the Contract does not state that the representations and warranties of Seller set forth in

8

Section 4 are made as of the date of the contract and are and shall be restated as of the end of due diligence – it states "as of the closing date."[5]

Plaintiff asks this Court to be swayed by its selective quoting, ignore the "as of the closing date" language, and disregard "the well-understood function of [the bring down provision], which is to 'protect[ ] each party from the other's business changing or additional, unforeseen risks arising prior to closing.'" *Dermatology Assocs.*, 2020 WL 4581674, at *29 (quoting Lou R. Kling, Eileen T. Nugent & Brandon A. Van Dyke, *Negotiated Acquisitions of Companies, Subsidiaries and Divisions* § 14.02[1], at 14-9 (2020 ed.)). This Court should not be fooled by Plaintiff's selective quoting.

**II. Plaintiff mischaracterizes case law in an effort to mislead the Court.**

In addition to Plaintiff's improper selective quoting of the Contract, Plaintiff also mischaracterizes case law in an effort to mislead the Court. Plaintiff cites to *McMaster v. Strickland*, 305 S.C. 527, 409 S.E.2d 440 (Ct. App. 1991), and claims the case "bears a strikingly similarity to the facts here." (Dkt. No. 18, Pltf. Memo in Supp., at p. 18). Plaintiff argues "[a]s in *McMaster*, the Defendant assumed a risk that in retrospect it may now which is had not under taken." *Id. at p 19*. However, *McMaster* is clearly distinguishable for several reasons, including the fact that the purchase agreement at play in *McMaster* stated the following:

---

[5] While Plaintiff's construction lacks merit and is inconsistent with the language of the Contract, even if the Contract stated "as of the end of due diligence" as opposed to what it actually says, "as of the closing date," Section 9.05 of the Contract also required Plaintiff to "promptly give written notice to Purchaser of the occurrence of any event when known to Seller affects the truth or accuracy of any representations or warranties made or to be made by Seller under or pursuant to this Contract or amounts to any material change in any condition with respect to the Premises." (Dkt. No. 1-1, Contract, at p. 17 of 62). Plaintiff failed to comply with this provision by waiting 13 days to notify Buyer that Tenant Arcade had failed to pay its rent for the month of June, 2022, which was due on June 1, 2022. At the time of Tenant Arcade's failure to pay rent, due diligence had not yet expired. Conveniently, Seller elected to wait until after due diligence expired before notifying Buyer. Thus, even if the Contract was worded differently, Plaintiff's argument would fail.

9

> Purchaser represents and warrants that Purchaser has not relied upon any representations by Sellers as to the premises. Purchaser further agrees to accept the real property set forth herein in an "as is" condition.

McMaster, 305 S.C. at 529, 409 S.E.2d at 441. Notably, the buyer in *McMaster* did not require representations and warranties as to the condition of the property in its underlying contract for purchase and sale, and the Court noted that "the purchaser admitted he simply made a mistake by signing a contract without certain conditions to protect him in the event he could not obtain the necessary permits." *Id.* at 531, 409 S.E.2d at 442. However, in the present situation, Defendant specifically negotiated for contractual conditions to protect it in the form of the representations and warranties of Seller, which "are and shall be restated as of the Closing Date." (Dkt. No. 1-1, Contract, Section 4). Thus, McMaster does not "bear a strikingly similarity to the facts here" as Plaintiff claims.

### III. Plaintiff mischaracterizes and misstates general principals applicable to real estate law in an effort to mislead the Court.

Plaintiff's Memo repeats *ad nauseam* that the leases were deemed "permitted exceptions" to title under the terms of the Contract. At least as to this point, Plaintiff is accurate. Defendant, had it closed on the Property, would have been required to (and desired to) take title to such property subject to the leases and tenancies then in place, and those leases would have been assigned to and assumed by Defendant at the closing. Defendant would have had no right to unilaterally terminate those leases by virtue of Defendant's acquisition of the property.

A permitted exception is a term of art in the real estate industry that generally applies to marketable title. "In a purchase and sale agreement, the seller typically agrees to deliver and the purchaser agrees to accept clean title to real property subject to specific permitted exceptions." "Permitted Exception," Item w-017-1724 (Westlaw Practical Law Glossary, 2023), https://us.practicallaw.thomsonreuters.com/w-017-1724. "To be marketable, a title need not be flawless. . . . [i]t is a title which a reasonable purchaser, well-informed as to the facts and their legal

10

significance, is ready and willing to accept." *Gibbs v. G.K.H., Inc.*, 311 S.C. 103, 105, 427 S.E.2d 701, 702 (Ct. App. 1993). A review of the Contract reveals that the term Permitted Exceptions is used with that meaning and intent. For example, Sections 1.02, 4.01, 10.01(a), and 13.01 of the Contract all include the term "Permitted Exception," and all relate to title.

However, Plaintiff's reliance on the permitted exceptions are simply not relevant to this matter, as marketable title is not the issue at hand. The issue at hand is Plaintiff's breach of its representations and warranties contained in Section 4 of the Contract. Specifically, Plaintiff's assertion, though convoluted, seems to imply that by virtue of such leases being "permitted exceptions" to title, any representations and warranties of Plaintiff (as seller) in the Contract were meaningless. This is contrary to the "as of the closing date" language in the Contract, contrary to the well understood function of representations and warranties, and contrary to the well understood function of a bring down provision. *W. Filter Corp.*, 540 F.3d at 952 ("'representations and warranties are statements of fact as of the date of the execution of the acquisition agreement, and the truthfulness of the representations and warranties as of both the date of execution and [] the date of the closing is generally a condition to the closing . . . In other words, the representations and warranties serve as a safety net for the seller and buyer," and "[i]f prior to closing, either the seller or buyer discovers that a representation or warranty made by the other party is not true, they have grounds for backing out of the deal."); *see also Dermatology Assocs.*, 2020 WL 4581674, at *29 ("the well-understood function of [a bring down provision] is to 'protect[ ] each party from the other's business changing or additional, unforeseen risks arising prior to closing . . . its purpose [is] protecting against business changes that arise between the signing and closing."

Plaintiff's assertion is further undercut by Plaintiff's counsel's email (Dkt. No. 7-1) and its attachment (Exh. A) regarding Tenant Arcade's defaults – if Plaintiff's theory was correct, it does not make sense that Plaintiff's counsel would have sent the email and its attachment. (Dkt. No. 7-1, Email

11

from Plaintiff's Counsel) ("my client can no longer restate the representations of Section 4.02 as it pertains to the Arcade as they have failed to pay June, 2022 Rent or Additional Rent and now appear to be abandoning/surrendering the premises.") Thus, this Court should not be misled by Plaintiff's mischaracterization of well understood principals applicable to real estate law.

### IV. Buyer properly terminated the Contract because Plaintiff could not meet its obligation to restate the representations and warranties made in Section 4 of the Contract "as of the closing date."

By its own admission, Seller defaulted under the Contract because it could no longer restate the representations and warranties of Section 4 as it pertained to Tenant Arcade, which failed to pay June, 2022 Rent and Additional Rent and abandoned the premises. (Dkt. No. 7-1, Email from Plaintiff's Counsel). Defaults by Seller under the Contract are governed by Section 13.04, which reads as follows:

> §13.04  Seller Default.  Notwithstanding anything to the contrary contained herein, if Seller shall default in the performance of Seller's obligations under this Contract and such default is not cured within the earlier to occur of (i) five (5) days of Seller's receipt of written notice from Purchaser demanding same; or (ii) the Closing Date, Purchaser's sole and exclusive remedy shall be, and Purchaser shall be entitled, to either (a) terminate this Contract and receive (i) a return of the then Downpayment (but only to the extent that the Downpayment has actually be paid by Purchaser to Escrowee, plus the interest thereon), and (ii) reimbursement for Purchaser's Actual Costs Incurred subsequent to May 1, 2022, and the Seller shall be released from any further liability to Purchaser hereunder, except for those obligations and liabilities that are expressly stated to survive termination of this Contract, or, in the alternative, (b) seek specific performance of Seller's obligations hereunder, provided that any such action for specific performance must be commenced within sixty 60) days after such default. Except as otherwise provided in this Contract, in no event whatsoever shall Seller be liable to Purchaser for any damages of any kind whatsoever (and this sentence shall survive the Closing and/or termination of this Contract). As used herein, "Actual Costs Incurred" shall mean all actual out of pocket costs of due diligence and all expenses actually incurred or obligated for by Purchaser in an effort to consummate the transaction contemplated herein, to include, without limitation, appraisal costs, survey costs, costs of inspections and reports, title examination, and reasonable legal fees up to a maximum amount of $20,000.

(Dkt. No. 1-1, Contract, at p. 24 of 62).

Plaintiff, as Seller, was in default because it could no longer restate the representations and warranties of Section 4 as it pertained to Tenant Arcade, which failed to pay June, 2022 Rent and

Additional Rent and abandoned the premises. As is evidenced by Schedule E to the Contract, these were not immaterial breaches/defaults. Tenant Arcade was one of Seller's two largest tenants, and Tenant Arcade's failure to pay its rent and abandonment of Seller's premises on the eve of closing created a considerable loss of revenue that went to the heart of the economics of the deal. Specifically, as evidenced by Schedule E to the Contract, Tenant Arcade's rent made up 32.52%, or over a third, of the $93,285.33 in monthly rents. The next largest tenant's rent was $16,083.75, with the rents of the remaining 3 tenants decreasing dramatically and ultimately down to $800.00 per month (Dkt. No. 1-1, Contract, Schedule E, p. 53 of 62). Thus, this was not an immaterial breach/default.[6]

As such, on June 15, 2022, Buyer sent a Notice of Default and requested that Seller cure its defaults under the Contract prior to closing. Plaintiff mischaracterizes the initial Notice of Default as a "Termination Notice." (Dkt. No. 18, Pltf. Memo in Supp., at p. 12). The Notice of Default was attached as Exhibit B to Buyer's Counterclaim. (Dkt. No. 7-2, Notice of Default).

Following Plaintiff's failure to cure its default by the deadlines set forth for cure in Section 13.04 of the Contract, Buyer then sent a Notice of Termination on June 22, 2022, which was attached as Exhibit C to Buyer's Counterclaim. (Dkt. No. 7-3, Notice of Termination). (Dkt. No. 18, Pltf. Memo in Supp., at p. 20). Plaintiff claims Defendant did not allow Plaintiff "a reasonable amount of time to cure." This is incorrect. Section 13.04 of the Contract, depicted above, allowed Plaintiff to

---

[6] Importantly, the bring down provision in this case did not have a materiality qualifier. (Dkt. No. 1-1, Contract, at p. 11 of 62) ("[t]he representations and warranties of Seller set forth in this Section 4 are made as of the date of this Contract and are and shall be restated as of the Closing Date."). A seller can protect itself from immaterial changes concerning representations and warranties by including a materiality qualifier. *See e.g., Dermatology Assocs.*, 2020 WL 4581674, at *9 (requiring that the representations and warranties be restated "in all material respects as of the Closing Date"). Here, the Seller did not require a materiality qualifier in the bring down provision. However, even if it did, Tenant Arcade's failure to pay rent and abandonment of Seller's premises had a material financial impact to the deal as Tenant Arcade's rent made up 32.52%, or over a third, of the $93,285.33 in monthly rents. Importantly, under South Carolina law, the breach of a warranty does not require materiality. *Nix v. Sovereign Camp, W. O. W.*, 180 S.C. 153, 185 S.E. 175, 177 (1936). ("construed as a warranty, the falsity of the statement amounts to an express breach of the contract, regardless of the good faith and honest purpose . . . and the statement does not have to be material.").

cure within the earlier of 5 days or the closing date, which was June 16, 2022. It is undisputed that Seller failed to cure its default prior to closing; indeed, it refused to cure based on its construction of the Contract. *Bank of New York Mellon Tr. Co., Nat. Ass'n v. Morgan Stanley Mortg. Cap., Inc.*, No. 11 CIV. 0505 CM GWG, 2013 WL 3146824, at *13 (S.D.N.Y. June 19, 2013) ("Obviously, since the representation and warranty had been breached . . . there was no way to cure it."); *see also Dermatology Assocs.*, 2020 WL 4581674, at *29 ("Plaintiffs could not possibly have satisfied the Bring-down Provision at Closing.").

## CONCLUSION

Based on the foregoing, Counterclaimant/Defendant, Jersam Realty, Inc. respectfully requests that the Court deny Plaintiff's Motion for Summary Judgment and issue an Order granting Jersam summary judgment on its Counterclaims, awarding the relief sought therein, and dismissing Plaintiff's Complaint. Specifically, Jersam Realty, Inc. respectfully requests that the Court rule as a matter of law that (1) Defendant/Buyer properly terminated the Contract because Plaintiff, Chalpin Realty, SC, LLC, could not meet its obligation to restate the representations and warranties made in Section 4 of the Contract "as of the closing date" (June 16, 2022) due to one of Plaintiff/Seller's tenants failing to pay rent and the tenant's abandonment of Plaintiff/Seller's premises; and (2) as a result and pursuant to the Contract, Defendant/Buyer is entitled to the return of its $1,000,000.00 Downpayment (plus Plaintiff's payment of statutory interest of 7.25% from June 23, 2022), $20,000.00 in Actual Costs Incurred prior to the scheduled closing, and all litigation expenses, including actual attorney's fees and court costs incurred in this action. In the event the Court rules in favor of Counterclaimant/Defendant, Jersam Realty, Inc., it respectfully requests leave of Court to submit an affidavit addressing the Actual Costs Incurred, its litigation expenses (including actual attorney's fees and court costs incurred in this action), and a statutory interest calculation for the Court's consideration.

Respectfully Submitted,

**HAYNSWORTH SINKLER BOYD, P.A.**

*s/Stafford J. McQuillin III*
Stafford J. McQuillin III (Fed ID #10715)
mmcquillin@hsblawfirm.com

**AND**

**PARKER NELSON & ASSOCIATES**

Theodore Parker III (Fed ID #12224)
Tparker@pnalaw.net

*Attorneys for Jersam Realty, Inc.*

January 27, 2022