IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CHALPIN REALTY SC, LLC, | ) | Civil Action No: 4:22-cv-02651-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | **JERSAM REALTY, INC.'S REPLY TO** |
| vs. | ) | **PLAINTIFF'S RESPONSE IN** |
| | ) | **OPPOSITION TO SUMMARY** |
| JERSAM REALTY, INC., | ) | **JUDGMENT** |
| | ) | |
| Defendant. | ) | |

In accordance with the Court's Consent Scheduling Order (Dkt. No. 15) and pursuant to Local Rule 7.07, Counterclaimant/Defendant, Jersam Realty, Inc. ("Jersam" or "Buyer") submits this Reply to Plaintiff's Response in Opposition to Jersam's Motion for Summary Judgment (Dkt. No. 20, Pltf. Response).

## REPLY ARGUMENT

Despite Plaintiff's convoluted arguments, this case is simple and centers on the Contract's bring down provision, which states, "[t]he representations and warranties of Seller set forth in this Section 4 are made as of the date of this Contract **and are and shall be restated as of the Closing Date**." (Dkt. No. 1-1, Contract, at p. 11 of 62). In Section 4 of the Contract, entitled "Representations of Seller," Plaintiff as Seller "represent[ed] and covenant[ed]" to Buyer regarding the status of Plaintiff's leases and tenants. *Id.* at p. 8 of 62. Plaintiff as Seller agreed that the Representations of Seller "are and shall be restated as of the Closing Date," which the parties agreed to schedule on June 16, 2022. *Id.* at p. 11 of 62; Dkt. No 1, Complaint at ¶ 43. Specifically, in Section 4.02(b) of the Contract, Plaintiff represented that "all of the Leases are in full force and effect." (Dkt. No. 1-1, Contract, at p. 8 of 62). In Section 4.02(k) of the Contract, Plaintiff represented that "to Seller's actual knowledge, no tenant who is in actual possession as of the Effective Date under any Lease is in breach

1

of any of its obligations under said Lease, and there exists no conditions which, with the giving of notice or the passage of time would constitute a breach by any tenant of its obligations under any Lease." *Id.* at p. 9 of 62.

It is undisputed that prior to the closing, one of Plaintiff's largest tenant's,[1] Epic Arcades SC LLC ("Tenant Arcade"), failed to pay rent for June 2022 on June 1, 2022 and abandoned the premises. Indeed, when Plaintiff's counsel emailed Buyer regarding Tenant Arcade's failure to pay rent and abandonment of the premises, he acknowledged that "my client can no longer restate the representations of Section 4.02 as it pertains to the Arcade as they have failed to pay June, 2022 Rent or Additional Rent and now appear to be abandoning/surrendering the premises." (Dkt. No. 7-1, Email from Plaintiff's Counsel). By Plaintiff counsel's own admission, Plaintiff could not fulfill its obligations under the Contract's bring down provision.

The subject property was marketed for sale as a multi-tenant retail project, with the property to be sold along with the tenants and leases in place such that the existing leases would be assigned to Buyer at closing. In this context, the purpose of a bring down provision[2] is well established and understood. "A bring down is a provision requiring the representations and warranties that were made at signing to be made again on the closing date." Item 4-382-3286 (Westlaw Practical Law Glossary, 2022), https://us.practicallaw.thomsonreuters.com/4-382-3286;

---

[1] As shown in Schedule E to the Contract, Tenant Arcade's monthly rent ($30,345.00) made up 32.52%, or over a third, of the $93,285.33 in monthly rents for the Property. The next largest tenant's rent was $16,083.75, with the rents of the remaining 3 tenants decreasing dramatically and ultimately down to $800.00 per month (Dkt. No. 1-1, Contract, Schedule E, p. 53 of 62).

[2] A bring down provision can be automatic or it can provide for a separate certificate to be delivered at closing. The Contract at issue did not require a separate certificate to be delivered at closing and instead provided for the representations and warranties to be automatically restated as of the Closing Date. (Dkt. No. 1-1, Contract, Section 4) ("[t]he representations and warranties of Seller set forth in this Section 4 are made as of the date of this Contract **and are and shall be restated as of the Closing Date**.") (emphasis added). Despite Plaintiff's arguments in its Response, there is no case law requiring that a bring down provision be accompanied by a certificate.

*see also* Bring-down Provision, Black's Law Dictionary (11th ed. 2019) ("A "bring-down provision" is defined as "[a] contractual covenant that all of a party's representations and warranties were true when the contract was executed and will be true on the closing date."). "'[R]epresentations and warranties are statements of fact as of the date of the execution of the acquisition agreement, and the truthfulness of the representations and warranties as of both the date of execution and [] the date of the closing is generally a condition to the closing.'" *W. Filter Corp. v. Argan, Inc.*, 540 F.3d 947, 952 (9th Cir. 2008) (quoting Samuel C. Thompson, Jr., *Business Planning for Mergers and Acquisitions* 780 (Carolina Academic Press 2001) (1997). "In other words, the representations and warranties serve as a safety net for the seller and buyer." *Id.* "If, prior to closing, either the seller or buyer discovers that a representation or warranty made by the other party is not true, they have grounds for backing out of the deal." *Id.* "The condition that the other party's representations and warranties be true and correct at closing is generally the most significant condition for both buyers and sellers." Lou R. Kling et. al., *Summary of Acquisition Agreements*, 51 U. Miami L. Rev. 779, 799 (1997). "This 'bringdown' clause protects each party from the other's business changing or additional, unforeseen risks arising before closing." *Id.* "The reps & warranties, when combined with the bring-down condition, serve an important risk allocation purpose." *Akorn, Inc. v. Fresenius Kabi AG*, No. CV 2018-0300-JTL, 2018 WL 4719347, at *78, FN 761 (Del. Ch. Oct. 1, 2018), *aff'd*, 198 A.3d 724 (Del. 2018) (internal citations omitted). "In effect, they provide downside protection on specific aspects of the deal." *Id.* "If those aspects are not true at the closing, the buyer has the right to walk away." *Id.* "This can include events that are outside the seller's control." *Id.* "[W]here the representations and warranties expire at closing . . . it being understood that the contractual representations and warranties will be true as of the closing date and can provide a basis to avoid closing." *GRT, Inc. v. Marathon GTF Tech., Ltd.*, No. CIV.A. 5571-CS, 2011 WL 2682898, at *13 (Del. Ch. July 11, 2011).

**I. Plaintiff's reliance on the "effective date" language from the Assignment and Assumption of Leases Form, which was to be signed at the Closing, is misplaced.**

In its Response, Plaintiff improperly relies on the "Effective Date" language from the "Assignment and Assumption of Leases" Form and Section 20.08[3] of the Contract to argue that its representation and warranties need only be true as of Contract's Effective Date. (Dkt. No. 20, Pltf. Response, p. 6). However, the Assignment and Assumption of Leases is an unsigned and undated form document, attached as a schedule to the Contract, which Plaintiff and Buyer were required to execute and deliver "at the Closing." (Dkt. No. 1-1, Contract, Sections 10 and 11). Thus the "Effective Date" as used in the Assignment and Assumption of Leases form document is the date of Closing. Specifically, Sections 10 and 11 of the Contract provide:

> **Section 10.   Seller's Closing Obligations**
>
> §10.01.  At the Closing, Seller shall deliver the following to Purchaser:
>
> (a)  A limited warranty deed, conveying good and marketable, fee simple title to the Premises, subject only to the Permitted Exceptions, in a recordable form reasonably acceptable to Purchaser.
>
> (b)  An executed Assignment and Assumption of the Leases and Security Deposits in the form annexed hereto at Exhibit 10.01(b), together with the originals or a copy, as the case may be, of the Leases.
>
> **Section 11.   Purchaser's Closing Obligations**
>
> At the Closing, Purchaser shall:
>
> §11.01.  Pay to Seller (and/or to Seller's designee(s) provided Seller shall have given notice to Purchaser of the name(s) of such designee(s) not less than 24 hours prior to the Closing) in the manner required pursuant to this Contract, the portion of the Purchase Price payable at the Closing, as adjusted for apportionments and any other credits or adjustments, if any, provided for in this Contract.
>
> §11.02.  Deliver to Seller its executed counterpart of the Assignment and Assumption of the Existing Leases and Security Deposits, which Assignment and Assumption agreement shall release the Seller from any and all liability concerning the Leases and Tenancies.

---

[3] Section 20.08 of the Contract states, "[i]f the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such Schedule or rider shall prevail," (Dkt. No. 1-1, Contract, Section 20.08).

4

(Dkt. No. 1-1, Contract, Sections 10 and 11).   Plaintiff argues that the "Effective Date" language used in the form document, which was to be executed and delivered "at the Closing," is the same as the "Effective Date" of the Contract (the date the Contract was signed). This argument makes no sense. For example, if Plaintiff's argument was correct, Buyer would have been the landlord on date the Contract was signed. However, on the date the Contract was signed, Plaintiff did not assign any of its leases and Buyer did not take any assignment of the leases.  It is undisputed that the Contract's effective date was May 13, 2022, the date the Contract was signed.  It is also undisputed that the Assignment of Leases would not be executed or occur until the Closing.  Thus, Plaintiff's reliance on the "effective date" language from the Assignment and Assumption of Leases Form, which was to be executed and delivered at the Closing, is without merit.

## II. Plaintiff's reliance on the leases being classified as "permitted exceptions" to title and Section 20.08 of the Contract is also misplaced.

Plaintiff argues that by virtue of the subject leases being "permitted exceptions" to title, any representations and warranties of Plaintiff (as seller) in the Contract concerning the leases were meaningless. Plaintiff is correct insofar as that the leases were permitted exceptions to title.  The subject property was marketed for sale as a multi-tenant retail project, with the property to be sold along with the tenants and leases in place. Buyer, had it closed on the Property, would have been required to (and desired to) take title to the property subject to the leases and tenancies then in place, and those leases would have been assigned to and assumed by Defendant at the closing.  Defendant would have had no right to unilaterally terminate those leases by virtue of Defendant's acquisition of the property.

A permitted exception is a term of art in the real estate industry that applies to title.  "In a purchase and sale agreement, the seller typically agrees to deliver and the purchaser agrees to accept

clean title to real property subject to specific permitted exceptions."[4] A review of the Contract reveals that the term Permitted Exceptions is used with that meaning and intent. For example, Sections 1.02, 4.01, 10.01(a), and 13.01 of the Contract all include the term "Permitted Exception," and all relate to title. (Dkt. No. 1-1, Contract).

Plaintiff's reliance on the permitted exceptions are simply not relevant to this matter, as title is not the issue at hand. The issue at hand is Plaintiff's breach of its representations and warranties contained in Section 4 of the Contract. Specifically, Plaintiff's assertion, though convoluted, seems to imply that by virtue of such leases being "permitted exceptions" to title, any representations and warranties of Plaintiff (as seller) concerning the leases in the Contract were meaningless. However, the fact that the Leases are permitted exceptions to title is not inconsistent with the representations and warranties made by Seller concerning the leases.

Thus, Plaintiff's reliance on Section 20.08 is misplaced. Section 20.08 of the Contract states, "[i]f the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such Schedule or rider shall prevail," (Dkt. No. 1-1, Contract, Section 20.08). The portions of the Contract providing for "permitted exceptions" to title (including, without limitation, the leases) and the portions of the Contract setting forth Plaintiff's representations and warranties regarding the leases are complimentary, not contradictory. Permitted exceptions or permitted encumbrances are exceptions to title. In an ideal world, a buyer would acquire 100% fee simple title when acquiring a property, subject to nothing. In the real world, there are many things that cause fee simple title to be less than absolute, including easements, restrictive covenants, encroachments, and leases and tenancies in place. Here, Defendant does not argue that its title would not have been subject to the leases had the transaction closed. In fact, the leases were desired and

---

[4] "Permitted Exception," Item w-017-1724 (Westlaw Practical Law Glossary, 2023), https://us.practicallaw.thomsonreuters.com/w-017-1724.

went to the heart of the economics of the deal. As is customary in real estate transactions where a property is to be sold along with the tenants and leases in place, Buyer negotiated a contract that required Plaintiff, as Seller, to make certain representations and warranties about the leases, including representations and warranties that "all of the Leases are in full force and effect" and that no tenant "is in breach of any of its obligations under said Lease." (Dkt. No. 1-1, Contract, at Section 4.02(b)(k)). In nearly every purchase agreement where a property is to be sold along with the tenants and leases in place, the leases are classified as permitted exceptions to title and the seller makes representations and warranties regarding the leases. These customary provisions are complimentary and can coexist – these are not contradictory provisions. Accordingly, Section 20.8 is not implicated, and Plaintiff's reliance on said provision is misplaced.

    While Plaintiff's arguments are creative, the arguments fly in the face of well understood principles applicable to real estate law that are customary in this type of transaction. Indeed, Plaintiff has not and cannot cite to any cases holding that by virtue of the leases being "permitted exceptions" to title, any representations and warranties concerning the leases were meaningless. Plaintiff's argument is contrary to the well understood function of representations and warranties and contrary to the well understood function of a bring down provision. *W. Filter Corp.,* 540 F.3d at 952 ("'representations and warranties are statements of fact as of the date of the execution of the acquisition agreement, and the truthfulness of the representations and warranties as of both the date of execution and [] the date of the closing is generally a condition to the closing . . . In other words, the representations and warranties serve as a safety net for the seller and buyer," and "[i]f prior to closing, either the seller or buyer discovers that a representation or warranty made by the other party is not true, they have grounds for backing out of the deal."); *see also Dermatology Assocs. of San Antonio v. Oliver St. Dermatology Mgmt. LLC*, No. CV 2017-0665-KSJM, 2020 WL 4581674, at *29 (Del. Ch. Aug. 10, 2020) ("the well-understood function of [a bring down provision] is to

'protect[ ] each party from the other's business changing or additional, unforeseen risks arising prior to closing . . . its purpose [is] protecting against business changes that arise between the signing and closing.")

## CONCLUSION

Based on the foregoing, Counterclaimant/Defendant, Jersam Realty, Inc. respectfully requests that the Court deny Plaintiff's Motion for Summary Judgment and issue an Order granting Jersam summary judgment on its Counterclaims, awarding the relief sought therein, and dismissing Plaintiff's Complaint. Specifically, Jersam Realty, Inc. respectfully requests that the Court rule as a matter of law that (1) Defendant/Buyer properly terminated the Contract because Plaintiff, Chalpin Realty, SC, LLC, could not meet its obligation to restate the representations and warranties made in Section 4 of the Contract "as of the closing date" (June 16, 2022) due to one of Plaintiff/Seller's tenants failing to pay rent and the tenant's abandonment of Plaintiff/Seller's premises; and (2) as a result and pursuant to the Contract, Defendant/Buyer is entitled to the return of its $1,000,000.00 Downpayment (plus Plaintiff's payment of statutory interest of 7.25% from June 23, 2022), $20,000.00 in Actual Costs Incurred prior to the scheduled closing, and all litigation expenses, including actual attorney's fees and court costs incurred in this action. In the event the Court rules in favor of Counterclaimant/Defendant, Jersam Realty, Inc., it respectfully requests leave of Court to submit an affidavit addressing the Actual Costs Incurred, its litigation expenses (including actual attorney's fees and court costs incurred in this action), and a statutory interest calculation for the Court's consideration.

Respectfully Submitted,

**HAYNSWORTH SINKLER BOYD, P.A.**

*s/Stafford J. McQuillin III*
Stafford J. McQuillin III (Fed ID #10715)
mmcquillin@hsblawfirm.com

**PARKER NELSON & ASSOCIATES**

Theodore Parker III (Fed ID #12224)
Tparker@pnalaw.net

*Attorneys for Jersam Realty, Inc.*

February 10, 2022