**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**FLORENCE DIVISION**

| | |
|---|---|
| CHALPIN REALTY SC, LLC, | ) Civil Action No: 4:22-cv-02651-JD |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| JERSAM REALTY, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF CHALPIN REALTY SC, LLC'S**
**REPLY MEMORANDUM OF LAW IN IN FURTHER SUPPORT OF ITS**
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

*Attorneys for Plaintiff*
*Chalpin Realty SC, LLC*
Parker Poe Adams & Bernstein LLP
200 Meeting Street, Suite 301
Charleston, SC 29401

Kishner Miller Himes P.C.
40 Fulton Street, 12th Floor
New York, New York 10038

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT .............................................................................................. 2

ARGUMENT ........................................................................................................................ 4

POINT I:        THE LAST STANZA OF SECTION 4 IS INDISPUTABLY SUPERSEDED BY SECTION 20.08, PURSUANT TO WHICH PLAINTIFF WAS TO DELIVER AT CLOSING ONLY WHAT WAS LISTED ON EXHIBIT 10.01(b), WHICH LIST DID NOT INCLUDE A BRING DOWN CERTIFICATE ........................ 4

POINT II:      THE PERMITTED EXCEPTION IN THE CONTRACT INCLUDING LEASES AND TENANCIES ARE INDISPUTABLE EXCLUSIONS WHICH SHIFTED THE RISK OF THE ARCADE TENANT'S ACTIONS TO DEFENDANT AFTER THE EFFECTIVE DATE .................................................................... 6

    A.   Defendant, a Sophisticated Real Estate Investor, Indisputably Agreed to the Leases and Tenancies as Permitted Exceptions "subject to" which Defendant was Required to Take in the Condition as they Existed after the Effective Date and on the TOE Closing Date ............................................................................ 6

    B.   Having Failed to Counter Plaintiff's Statement of Material Facts, Defendant Should be Deemed to Have Admitted That it Assumed the Risk Pertaining to Arcade Tenant ....................................................................................................... 7

POINT III:     AS THE CONTRACT INDISPUTABLY DOES NOT REQUIRE A "BRING DOWN CERTIFICATE," NO MECHANISM IS PROVIDED TO PERFORM ANY SUPPOSED "BRING DOWN PROVISION" THEREBY FURTHER DEFEATING DEFENDANT'S STRAINED RELIANCE ON THE LAST STANZA IN SECTION 4 ................................................................................ 10

    A.   Contracts having a "Bring Down Provision" Contain a Concurrent Obligation for Seller to deliver to Purchaser a "Bring Down Certificate" at the Closing, Which Obligation Indisputably Does Not Exist in the Contract at Issue ........................ 10

    B.   The Contract Does Not Contain a Closing Obligation Requiring Plaintiff to Deliver a Bring Down Certificate to Defendant on the TOE Closing Date, and Courts will Not Read Such Obligation into the Contract ...................................................... 13

    C.   The Last Stanza of Section 4 of the Contract Does Not "Automatically" Update Anything .......................................................................................................... 14

CONCLUSION .................................................................................................................. 15

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

Bennett v. Inv'rs. Tit. Ins.Co.,
370 S.C. 578, 635 S.E. 2d 649 (S.C. Ct. App. 2006) ...................................................7

Bradley v. U.S. Foods, Inc.,
4:14-cv-1772, 2015 WL 5158731 (D.S.C. Sept 2, 2015) ........................................9

Briggs v. Low Country Home Med. Equip. Co.,
4:14-CV-705-PMD-KDW, 2015 WL 13733954 (D.S.C. Aug. 31, 2015) ..........................8,9

Lady Beaufort, LLC v. Hird Is. Investment, Inc.,
2022 WL 2062112 (S.C. Ct. App. June 8, 2022), *reh denied* (July 28, 2022) ......................13

Lee v. Univ. of S.C.,
407 S.C. 512, 757 S.E. 2d 394 (2014) ...........................................................14, 15

McIntosh v. Whieldon.,
30 S.E. 2d 851 (1944) ................................................................................5

Pee Dee Stores, Inc. v. Doyle,,
381 S.C. 234 (S.C. Ct. App. 2009) ...............................................................13

Rozen v. & Calf Cr., LLC,,
52 A.D. 3d 590 (2nd Dep't 2008) ...................................................................7

U.S. Bank Tr. Nat. Ass'n v. Bell,
385 S.C. 364, 684 S.E. 2d 199 (S.C. Ct. App. 2009)............................................13

W. Filter Corp. v. Argan, Inc.,
540 F.3d 947 (9th Cir. 2008) ......................................................................12

## <u>Other Authorities</u>

17A Am. Jur. 2d Contracts § 507 ..................................................................14

Black's Law Dictionary, Third Pocket Edition (2006)....................................................6

Plaintiff Chalpin Realty SC, LLC ("Plaintiff")[1] respectfully submits this reply memorandum of law in further support of its motion for summary judgment ("Plaintiff's Motion") and in reply to Defendant's opposition papers (ECF 21) ("Defendant's Opposition").

## PRELIMINARY STATEMENT

Defendant's Opposition bespeaks a single argument, *i.e.* that the last stanza of Section 4 of the Contract is a Bring Down Provision that, therefore, demands the Court: 1. ignore the many exhibits and schedules that supersede this very sentence as required by Section 20.08 of the Contract; and 2. impute upon Plaintiff nonexistent closing obligations.

More particularly, Defendant seeks to defeat Plaintiff's Motion upon its request that the Court require Plaintiff to deliver a Bring Down Certificate to Defendant as it relates to Leases and Tenancies, despite the indisputable absence of any legal or factual support for doing so.

*Defendant's argument fails by the Contract's plain language.*

Section 10 of the Contract, entitled *Seller Closing Obligations*, sets forth the entirety of Plaintiff's closing obligations, including those pertaining to the Leases and Tenancies. **A Bring Down Certificate is not required.** All that was required is set forth in Section 10.01(b) which, in turn, refers to *"the form annexed hereto as Exhibit 10.01(b)…"*. That Exhibit, entitled *Assignment and Assumption of Leases* ("Assignment"), provides that the Leases and Tenancies and its rights and obligations are to be delivered to and accepted by Defendant *"as of the Effective Date."* This language alone defeats Defendant's Opposition and entitles Plaintiff to summary judgment.

Lending further strength to this argument is Section 20.08 of the Contract, another section that Defendant's chooses to ignore. Section 20.08 of the Contract states: *"If the provisions of any*

---

[1] Any capitalized terms not specifically defined herein shall have the same meaning as ascribed to them in the Declaration of Marc Chalpin, dated December 23, 2022 located at ECF Doc. No. 18-20.

2

schedule or rider to this Contract are inconsistent with the provisions of this Contract, the provisions of such schedule or rider shall prevail....”   Therefore, the language contained in the Contract's Assignment indisputably governs and supersedes Section 4 as it relates to the Leases and Tenancies.

But the Contract's Assignment is not the only straightforward language that entitles Plaintiff to summary judgment. The Court also need not look further than the Contract's Schedule "B", entitled "*Permitted Exceptions,*" to conclude that Defendant agreed to accept the Premises subject to the conditions of the Leases and Tenancies. Per Section 20.08 which indisputably governs any other language set forth in Section 4, Schedule B resolves Plaintiff's Motion is its favor by stating that Defendant shall accept title *subject to* the *Leases and Tenancies*.

Defendant's Opposition either misapprehends or disingenuously argues that Permitted Exceptions deal only with title issues. **Leases and Tenancies are indisputably on the list of Permitted Exceptions.**

Above and beyond Schedule B, Plaintiff's obligations to Defendant are consistently "*subject to"* the enumerated Permitted Exceptions throughout the Contract. *See* Plaintiff's Motion, at ECF 18, Point I, pp. 14-15; *see also* Plaintiff's Opposition to Defendant's Motion for Summary Judgment at ECF 20, Point I, pp. 8-9.  Significantly, Section 4 itself recognizes in the preamble language contained in Section 4.01 that Defendant must take title subject to the Permitted Exceptions. The very next section, 4.02, specifically refers to the Arcade Tenant having been in bankruptcy and operating under a Chapter 11 Plan.  Hence, Defendant indisputably agreed to close "subject to" the Arcade's lease and tenancy.

In sum, Defendant's tunnel vision argument based solely on the last stanza of Section 4: (1) runs afoul of basic contract interpretation principles which prevent a Court from imposing an

otherwise nonexistent obligation into Contracts—specifically a Bring Down Certificate and (2) ignores the array of plain and unambiguous provisions which supersede the last stanza of Section 4.

As a result, Plaintiff's Motion should be granted in its entirety.

## ARGUMENT

Defendant's Opposition recycles the same unpersuasive argument it made in its motion for summary judgment ("Defendant's Motion") — *i.e.* Plaintiff breached the last stanza of Section 4. *See* ECF 21, pg. 2. As briefed in Plaintiff's Motion (ECF 18) and in Plaintiff's opposition to Defendant's Motion (ECF 20), Defendant is simply wrong both on the law and the facts. As a threshold matter, many Contract provisions supersede the last stanza of Section 4 thereby defeating Defendant's only argument straight away.

## POINT I

### THE LAST STANZA OF SECTION 4 IS INDISPUTABLY SUPERSEDED BY SECTION 20.08, PURSUANT TO WHICH PLAINTIFF WAS TO DELIVER AT CLOSING ONLY WHAT WAS LISTED ON EXHIBIT 10.01(b), WHICH LIST DID NOT INCLUDE A BRING DOWN CERTIFICATE

Section 20.08 of the Contract indisputably states that: "*If the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this Contract, **the provisions of such schedule or rider shall prevail**.*" (emphasis added). Hence, closing obligations set forth in schedules and riders indisputably govern over any alleged inconsistent obligations in the Contract. Defendant's Opposition does not argue otherwise.

And, these obligations were spelled out. The Contract on its face makes plain what Defendant was –and most importantly—was not entitled to *vis -a-vis* the Leases and Tenancies on the TOE Closing Date. *See* Contract at Section 10.

Indeed, Section 10, entitled "Seller's Closing Obligations," sets forth the list of documents that Plaintiff shall provide at closing. **A Bring Down Certificate is not on the list. Hence, Plaintiff had no obligation to confirm that the Leases and Tenancies were unchanged between the Effective Date and the TOE Closing Date.**

Rather, as set forth in Section 10.01(b), on the TOE Closing Date Plaintiff was to provide to Defendant the Assignment "*in the form annexed hereto at Exhibit 10.01(b), together with the originals or a copy, as the case may be, of the Leases*." Importantly, the Assignment expressly states that Defendant was to receive the Leases and Tenancies as they existed on the Effective Date:

*   **As of the Effective Date**, *[Plaintiff] does hereby sell, assign, transfer, convey and deliver unto [Defendant], its successors and assigns, its right, title and interest in, to and under the Leases and Security Deposits.* ***As of the Effective Date***, *[Defendant] hereby accepts such assignment of the Leases and Security Deposits and agrees to be bound by, and to keep, observe and perform, the terms, covenants and conditions of the Leases.* (emphasis added). Therefore, the Assignment sets forth the indisputable facts which defeat Defendant's fabricated argument that the representations pertaining to Leases and Tenancies are somehow to be made as of the TOE Closing Date.

Defendant's position is also contrary to long standing South Carolina law enforcing contract terms that specifically and expressly are to prevail over other inconsistent provisions. *See e.g. McIntosh v Whieldon*, 30 SE2d 851, 854 (1944) (recognizing and applying the well-established law in which riders supersede and govern over provisions within the initial body of the contract).

Hence, any changes to the status of the Arcade Tenant and its Lease that occurred between the Effective Date and the TOE Closing Date were immaterial to Plaintiff's obligations under the

Contract. The Assignment, and settled South Carolina law, both lead to an indisputable conclusion that Defendant's interpretation of the last stanza of Section 4 should be rejected because it conflicts with Defendant's superseding obligation to accept at closing the Assignment as of the Effective Date. Defendant chose not to perform this obligation. Hence, Plaintiff's Motion should be granted.

## POINT II

**THE PERMITTED EXCEPTIONS IN THE CONTRACT INCLUDING LEASES AND TENANCIES ARE INDISPUTABLE EXCLUSIONS WHICH SHIFTED THE RISK OF THE ARCADE TENANT'S ACTIONS TO DEFENDANT AFTER THE EFFECTIVE DATE**

> **A.    Defendant, a Sophisticated Real Estate Investor, Indisputably Agreed to the Leases and Tenancies as Permitted Exceptions "subject to" which Defendant was Required to Take in the Condition as They Existed after the Effective Date and on the TOE Closing Date**

Defendant's Opposition dismissively argues that "a permitted exception…generally applies to marketable title" and as a consequence, "Plaintiff's reliance on the permitted exceptions is simply not relevant to this matter as marketable title is not the issue at hand." *See* ECF 21, Defendant's Opp. Mem. pgs. 10-11. Defendant is wrong on both the law and the facts.

First, Defendant does not, and indeed cannot, cite to any case law standing for the proposition that Permitted Exceptions are limited only to matters that impact marketable title. Indeed, the contrary is true.

As previously briefed for the Court in both Plaintiff's Motion (ECF 18, pgs. 16-18) and in Plaintiff's opposition memorandum of law to Defendant's Motion (ECF 20, pgs. 7-8), Permitted Exceptions are widely negotiated and broadly enforced.[2]  South Carolina courts—no different than

---

[2] The list of Permitted Exceptions in the Contract is akin to exclusions present in a "habendum clause" commonly used in real property transactions under South Carolina law.  A habendum clause is "the part of an instrument…that defines the extent of the interest being granted and any conditions affecting the grant." Black's Law Dictionary, Third Pocket Edition, (2006).  As with Permitted Exceptions, habendum clauses under South Carolina law are enforced to prevent a buyer from canceling a contract after agreeing to take subject to the items listed in the habendum clause.

other states—strictly enforces Permitted Exceptions as matters to which a buyer may not object. Said differently- courts consistently enforce Permitted Exceptions as terms to which a buyer has agreed to take ownership of property "*subject to.*" *See* ECF 18-3; Sections 10.01(a) and 9.07(b) of the Contract; *see also Rozen v 7 Calf Cr., LLC*, 52 AD3d 590, 591 (2d Dep't 2008) (holding in favor of the purchaser because its objection was not among the seller's Permitted Exceptions).

Second, the bulk (7 out of 19) of Permitted Exceptions as listed within the Contract's Schedule B pertain to matters other than "marketable title": 1 (zoning), 2 (Seller consents), 8 and 13 (vault or coal chutes), 12 (notices of violations of law), 15 (Certificate of Occupancy for Myrtle Beach), and 18 (changes in street lines). Hence, the Contract itself demonstrates the absence of any factual support for Defendant's Opposition.

Accordingly, both the law and facts indisputably refute Defendant's Opposition to Plaintiff's *prima facie* showing that the Leases and Tenancies are Permitted Exceptions subject to which Defendant was obliged to close on the TOE Closing Date irrespective of any changes to the Arcade Tenant after the Effective Date. Because Defendant's Opposition pertaining to Permitted Exceptions is thoroughly refuted, Plaintiff's Motion should be granted.

**B. Having Failed to Counter Plaintiff's Statement of Material Facts, Defendant Should be Deemed to Have Admitted That it Assumed the Risk Pertaining to Arcade Tenant**

Plaintiff's Motion was accompanied by the sworn declaration of Marc Chalpin, one of the principals of Plaintiff ("Chalpin Aff.", at ECF 18-20). Mr. Chalpin indisputably possesses direct knowledge of the facts and circumstances surrounding the respective parties' conduct when

---

*See, e.g. Bennett v Inv'rs Tit. Ins. Co.*, 370 SC 578, 596, 635 SE2d 649, 658 (S.C. Ct. App. 2006) (holding "…all of the language in exception (6), read with the Deed as a whole, clearly and unambiguously placed the liability of error with respect to the Plat on [Buyer]"). Consequently, Defendant's argument that Permitted Exceptions are only title related should be rejected as contrary both to law and common practice.

entering into the Contract, and their respective actions which ensued subsequent to Contract commencement. *Id.*

Defendant's Opposition is not accompanied by any sworn statement from Defendant or anyone else with personal knowledge. Hence, Defendant does not contest the following material facts set forth in the Chalpin Aff.:

"*Pursuant to the Contract signed by the Plaintiff and Defendant for the sale of the Premises, the Arcade Tenant is a listed Permitted Exception to which the Defendant agreed to take subject. The Contract at Schedule E sets forth Permitted Exceptions to include the commercial leases ("Leases") and tenancies ("Tenancies"). The Arcade Tenant, which had recently emerged from a Chapter 11 Bankruptcy, is listed on Schedule E as one of the Leases and Tenancies, and was a known risk accepted by the Defendant.*" *See* Chalpin Aff . ¶ 5 (ECF 18-20)

*Defendant did its best to limit its risk regarding the Arcade Tenant to just 10 days. In fact, Defendant obtained four separate extensions of its Due Diligence Periods under the Contract...More particularly, on June 7, 2022, Plaintiff and Defendant entered into a Reinstatement Agreement (defined below), in which the Defendant agreed that it would no longer have the unilateral right of termination as it had concluded its due diligence...Upon execution of the Reinstatement Agreement, Defendant's obligation to close was contingency free of those matters which the Defendant contractually agreed to take subject to as a Permitted Exception, such as the Arcade Tenant. The Reinstatement Agreement also scheduled a time of the essence closing date of June 17, 2022 ("TOE Closing Date").* *Id.* (¶¶ 7, 10, 11).

Consequently, this Court may deem the facts set forth in the Chalpin Aff. as undisputed for the purposes of Plaintiff's Motion. *See Briggs v Low Country Home Med. Equip. Co.*, 4:14-CV-

8

705-PMD-KDW, 2015 WL 13733954, at *1 (D.S.C. Aug. 31, 2015) (finding "[a]s [Plaintiff's] statement of the facts is not properly contested, [Plaintiff's] factual statement could appropriately be considered undisputed for purposes of this Motion."); *accord Bradley v U.S. Foods, Inc.*, 4:14-CV-1772-RBH, 2015 WL 5158731, at *8 (D.S.C. Sept. 2, 2015).

Through the Chalpin Aff., Plaintiff has made a *prima facie* showing that Defendant knowingly agreed to the Contract after extensive due diligence on the Premises, including its Leases and Tenancies. Thereafter, on the very eve of the TOE Closing Date, Defendant chose not to close and has since seen Plaintiff's factual argument that demonstrates this choice was impermissible under the Contract. Yet for some reason, Defendant has not seen fit to provide any evidence to the contrary in its Opposition.

In fairness to Plaintiff, this Court should deem the facts in the Chalpin Aff., —in particular those statements relating to Defendant's months' long due diligence of the Arcade Tenant (Chalpin Aff. ¶¶ 17-32, 37-50) and to Defendant having knowingly accepted the risks concerning the Arcade Tenant's compliance with its lease (Chalpin Dec. ¶¶ 5-7 & 50)—as the only facts before this Court on either Plaintiff's Motion or Defendant's Motion.

As such, Defendant's Opposition provides no basis to deny Plaintiff's Motion, which should be granted in its entirety.

<u>POINT III</u>

**AS THE CONTRACT INDISPUTABLY DOES NOT REQUIRE A "BRING DOWN CERTIFICATE," NO MECHANISM IS PROVIDED TO PERFORM ANY SUPPOSED "BRING DOWN PROVISION" THEREBY FURTHER DEFEATING DEFENDANT'S STRAINED RELIANCE ON THE LAST STANZA IN SECTION 4**

    **A.  Contracts Having a "Bring Down Provision" Contain a Concurrent Obligation for Seller to deliver to Purchaser a "Bring Down Certificate" at the Closing, Which Obligation Indisputably Does Not Exist in the Contract at Issue**

Defendant admits that the last stanza of Section 4 does not require Plaintiff to provide a Bring Down Certificate. *See* Defendant's Opposition, pg. 2, footnote 1 ("The contract at issue did not require a separate certificate to be delivered at closing").   Hence, Defendant does not – and cannot-- rely on the straightforward and plain language in the last stanza of Section 4 to support its conclusory contention that Plaintiff somehow had a Bring Down obligation. Rather, Defendant attempts to go beyond the Contract to impute what is plainly not there.

The fatal problem with this attempt is that South Carolina contracts routinely provide that a Bring Down Provision is to be performed via a Bring Down Certificate. *See* Kishner Reply Dec. Exs. 1 and 2, attaching as exhibits two publicly available contracts which contain the customary language consisting of a Bring Down Provision and its associated requirement for the seller to deliver a Bring Down Certificate to the purchaser at the time of closing. These two contracts are representative of the hundreds more with the similar or same language also easily and publicly available through a simple search of the internet.  *See* Kishner Reply Dec.

The first contract, annexed as Exhibit 1 to the Kishner Reply Dec., pertains to an agreement for the sale of real property in Myrtle Beach, South Carolina, the same city in which the Premises is located.  The Bring Down Provision in that Contract is specifically denominated as such and expressly requires the Seller to deliver at closing a "*bring down certificate as to Seller's*

*representations and warranties as to the Lots being purchased at such Closing dated as of the date of Closing*." *See* Paragraph 12 "Seller's Closing Deliveries, (vii), pg. 13 to Exhibit 1 of Kishner Reply Dec.

The second contract, annexed as Exhibit 2 to the Kishner Reply Dec., likewise provides that the borrower be required in accordance with the Bring Down Provision to deliver to the lender a Bring Down Certificate at closing.

In both representative contracts, there are the following two distinct clauses: 1. Bring Down Provision clause, specifying the representations and warranties that will be updated at Closing; and 2. the associated closing obligation mandating the delivery of a Bring Down Certificate at the time of closing:

(1)    Pursuant to Section 3.1(a) buyer agreed to deliver "at or prior to each Closing… (viii) ***a bring down certificate*** executed by Borrower certifying compliance with all representations, warranties and covenants contained herein (the "***Bring Down Certificate***"); (emphasis added); *See* Kishner Reply Dec., Ex. 2.

(2)    Pursuant to Section 4.2 entitled "Survival of Representations and Warranties" the buyer agreed that "all" of its "representations and warranties made under this Agreement shall be made or deemed to be made at and as of the Effective Date…***as evidenced by the Bring Down Certificate required by Section 3.1(a) hereinabove***. (emphasis added). *See* Kishner Reply Dec., Ex. 2.

It is indisputable that the last stanza of Section 4 bears no resemblance to the above two clear and unambiguous Bring Down Provisions negotiated and enforceable in accordance with South Carolina law. Defendant's reliance on the last stanza of Section 4 as a "Bring Down Provision" is, thus, erroneous as a matter of fact.

Defendant's legal argument fares no better. Defendant's Opposition presents just one case to support its contention that the last stanza of Section 4 is a Bring Down Provision, namely *W. Filter Corp. v. Argan, Inc.,* 540 F.3d 947 (9th Cir. 2008). *See* Defendant's Opposition at p. 2. But this case is off point and non-binding on this court in any event.

Factually, *West Filter Corp.* is readily distinguishable as it concerns the sale of a business and not the sale of real property, does not discuss either a Bring Down Provision or delivery of a Bring Down Certificate, and has no language that would indicate any warranties and representations were to update "automatically" at closing. Moreover, the *West Filter Corp.* court interpreted California law and held that the parties' agreement did not shorten California's statute of limitations. *See W. Filter Corp. v Argan, Inc.,* 540 F3d 947 (9th Cir. 2008). Thus, *West Filter Corp.* cannot be relied upon to hold Section 4 contained an "automatic" Bring Down Provision, as Defendant asserts.

If Defendant desired Plaintiff to update on the TOE Closing Date any representations and warranties made on the Effective Date, it would have needed to secure an obligation from Plaintiff to deliver a Bring Down Certificate, just as described above. Defendant did not do so and does not dispute otherwise.

Defendant's failure in this regard, coupled with the indisputable evidence that shows the contractual hallmarks of a Bring Down Provision in South Carolina, demonstrate that the last stanza in Section 4 is not what Defendants wish it to be.

Accordingly, Plaintiff's Motion should be granted.

12

**B. The Contract Does Not Contain a Closing Obligation Requiring Plaintiff to Deliver a Bring Down Certificate to Defendant on the TOE Closing Date, and Courts will Not Read Such Obligation into the Contract**

The Contract at issue indisputably does not contain any language pertaining to the delivery of a Bring Down Certificate. In essence, Defendant is asking this Court to create this obligation.

Settled case law, however, says that no such obligation can be read into the Contract. *See Pee Dee Stores, Inc. v Doyle*, 381 SC 234, 241 (S.C. Ct. App. 2009) (stating that "[t]he court is without authority to insert obligations and words not otherwise specified in a contract, as same would be expressing an intent between the parties which was not expressed when the contract was executed"); *U.S. Bank Tr. Nat. Ass'n v Bell*, 385 SC 364, 379, 684 SE2d 199, 207 (S.C. Ct. App. 2009) (confirming that the Court is "… without authority to alter an unambiguous contract by construction or to make new contracts for the parties…'A court must enforce an unambiguous contract according to its terms regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully.'" (internal citations omitted)); s*ee also Lady Beaufort, LLC v Hird Is. Investments, Inc.*, 2018-001969, 2022 WL 2062112, at *3 (S.C. Ct. App. June 8, 2022], *reh denied* (July 28, 2022) (finding that the Seller did not breach a contract because "the parties did not explicitly bargain for the issuance of a certificate of tax compliance," and refusing to "read a provision into the Contract that was not bargained for.") (internal citations omitted).

Consequently, without a bargained for right to receive a Bring Down Certificate updating the representations and warranties in the Contract, Defendant is without recourse in this Court to now create this requirement for the first time via a rewrite of the last stanza of Section 4 of the Contract.[3]   Accordingly, Plaintiff's Motion is properly granted.

---

[3] Plaintiff's Motion cites to controlling case law holding that the statements made by attorneys in the process of

**C. The Last Stanza of Section 4 of the Contract Does Not
"Automatically" Update Anything**

Seeming to recognize the futility of arguing that it did not negotiate the right to a Bring Down Certificate from Plaintiff, Defendant scrambles to find a work around. More specifically, Defendant contends that the parties agreed in the Contract "instead [to] provid[e] for ***the restatement*** of the representations and warranties ***to be automatic***." *See* ECF 21, pg. 2. FN 1. (emphasis added).

Defendant's argument fails for two basic reasons.

First, Defendant offers nothing in the text of the last stanza of Section 4 to support its novel interpretation that Plaintiff's representations made as of the Effective Date would be "automatically" updated on the TOE Closing Date despite the myriad of Schedules, Exhibits, Riders and language in the Contract itself that expressly provide otherwise. *See* Point I and Point II, *supra.* Indeed, the word "automatic" is not used anywhere in the last stanza of Section 4. There is also no other word therein that could conceivably obligate Plaintiff's representations and warranties to update themselves on the TOE Closing Date as Defendant fancies.

Second, Defendant does not cite to a single case for the proposition that a Bring Down Provision can ***ever*** be "automatic." By trying to shoe horn into the last stanza of Section 4 an "automatic" update of Plaintiff's Effective Date representations and warranties, Defendant is unilaterally adding a new term to the Contract. This is impermissible under South Carolina law. *See Lee v Univ. of S.C.*, 407 SC 512, 518, 757 SE2d 394, 398 (2014) (stating that, by adding a

---

coordinating a closing may not be utilized as a "party admission." Beyond the fact that the language by Plaintiff's counsel specifically states that Defendant did not request a Bring Down Certificate (and thus is the precise opposite of what Defendant is asserting the statement means), Defendant fails to provide any caselaw challenging Plaintiff's cited cases in which Courts will not consider these types of statements as a "party admission." Thus, Defendant's argument that Plaintiff's counsel admitted anything should be rejected as yet another contention that is not supported either by fact or law. *See* ECF 18, pg. 24, footnote 3 & ECF 18-13.

requirement, "the University has attempted to impose an additional term that the parties did not agree upon. This unilateral attempt to modify the Agreement is impermissible. *See* 17A Am.Jur.2d *Contracts* § 507 ("[O]ne party to a contract may not unilaterally alter its terms.")).

Therefore, Defendant's argument that the last stanza of Section 4 of the Contract is an Bring Down Provision that "automatically" updates Plaintiff's Effective Date representations and warranties also fails both on the facts and on the law. Plaintiff's Motion should, therefore, be granted.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff's Motion should be granted in its entirety.

Dated: New York, New York
      February 10, 2023

          Respectfully submitted,

          PARKER POE ADAMS & BERNSTEIN LLP

          By: <u>s/ Jenna K. McGee</u>
              Jenna K. McGee (Fed. ID No. 10378)
              Connor J. Hoy (Fed. ID No 13477)
              200 Meeting Street, Suite 301
              Charleston, SC 29401
              Phone: 843-727-6302
              Fax: (843) 727-2680
              jennamcgee@parkerpoe.com
              connorhoy@parkerpoe.com

              **AND**

              KISHNER MILLER HIMES P.C.
              *Admitted Pro Hac Vice*
              Bryan W. Kishner, Esq.
              40 Fulton Street, 12th Floor
              New York, New York 10038
              kishner@kishnerlegal.com
              **Attorneys for Chalpin Realty SC, LLC**