IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Chalpin Reality SC, LLC, | ) | Case No. 4:22-cv-02651-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| Jersam Realty, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case arises out of an alleged breach of a real estate contract between Plaintiff Chalpin

Realty SC, LLC ("Plaintiff," "Chalpin," or "Chalpin-Seller"), and Defendant Jersam Realty, Inc.

("Defendant," "Jersam," or "Jersam-Buyer"), involving 1410 North Ocean Boulevard, Myrtle

Beach, South Carolina.[1] Before the Court are two Motions for Summary Judgment heard on

September 1, 2023. (DE 16, 17.) Chalpin-Seller moves for summary judgment, arguing "[Jersam]

was not entitled to cancel the Contract because it agreed to accept title of the premises subject to

the permitted exceptions of the leases and tenancies[,]" among other reasons. (DE 18, p. 17.) On

the other hand, Jersam-Buyer moves for summary judgment, arguing that Chalpin-Seller breached

the Contract because it "could not meet its obligation to restate the representations and warranties

made in [the Contract] 'as of the closing date[.]'" (DE 17-1, p. 13.)

The parties have briefed the motions, and so the motions are ripe for review and decision.

After reviewing the motions and memoranda submitted and considering the arguments of counsel,

---

[1]    Chalpin sued Jersam, alleging a Breach of Contract and Declaratory Judgment causes of action for
the real estate contract of sale, dated May 13, 2022 ("Contract"). (DE 1.) Jersam filed an Answer and
Counterclaim alleging Breach of Contract and Expedited Declaratory Judgment causes of action (DE 7) for
Chalpin's alleged breach of the Contract.   Both parties seek the $1,000,000 down payment ("Down
Payment") held in escrow.  (DE 18-3, p. 50.)

the Court grants Chalpin-Seller's Motion for Summary Judgment (DE 16) and denies Jersam-Buyer's Motion for Summary Judgment (DE 17) for these reasons.[2]

## BACKGROUND

On May 13, 2022, Chalpin-Seller and Jersam-Buyer entered the Contract for Jersam to buy a multi-tenant retail property at 1410 North Ocean Boulevard, Myrtle Beach, South Carolina ("Property"). (DE 1-1.) The Contract set the closing date for June 10, 2022. The Contract set a purchase price of $22,500,000 ("Purchase Price") for the Property and an initial down payment of $500,000 into the attorney escrow account of the Escrowee, Haynsworth Sinkler Boyd, P.A. ("Escrowee"). (DE 1-1, p. 50.) The Contract also required another down payment of $500,000 by Jersam-Buyer to the Escrowee on or before the "last day of the Due Diligence Period, time being of the essence," for a total down payment of $1,000,000. (Id.) The initial due diligence period was to end on May 21, 2022 ("Due Diligence Period"), but on May 20, 2022, Jersam-Buyer requested an extension to May 27, 2022. (DE 18-4.) After that, the Due Diligence Period was extended three more times such that the final due diligence period ended on June 3, 2022. (DE 18-5, 18-6, 18-7.)

In any event, on June 3, 2022, Jersam-Buyer terminated the Contract under Section 18.02 "because of various issues raised during its due diligence investigation, including the inability to reconcile CAM charges." (DE 18-10.) Jersam-Buyer offered to "reinstate the Contract if the Purchase price [were] reduced by $1.5[million]," which Chalpin-Seller rejected. (Id.) Still, the parties entered into a reinstatement agreement ("Reinstatement Agreement") by which the

---

[2]    Under the Court's Consent Scheduling Order, the parties agreed that "no discovery is being requested or believed to be necessary in this action," and "the action should be decided as a consequence of motions for summary judgment pursuant to Fed. R. Civ. P. 56." (DE 15). So there are no facts in dispute, and the recitation of facts provided here are uncontested by the parties.

Contract was amended to waive the Due Diligence Period and set the new closing date as no later than June 17, 2022 ("TOE Closing Date").  But "all other provisions of the [Contract] remain[ed] in full force and effect."  (Id.)

When the Contract was executed, the multi-unit Property had six tenants and leases, including Epic Arcades SC LLC ("Tenant Arcade").  Under the Contract, during the Due Diligence Period in effect before the Reinstatement Agreement, Jersam-Buyer had the right to true and accurate copies of all leases, among other things.  (DE 1-1, p. 26-27, §18.03.)  Jersam-Buyer also had "the right to contact each tenant under a Lease to discuss any matters related to each of the Leases."  (Id.)  During the Due Diligence period, Tenant Arcade was under Chapter 11 bankruptcy, and Jersam-Buyer had access to and reviewed Tenant Arcade's reorganization plan.  Also, during the first Due Diligence Period, Chalpin-Seller procured and provided Jersam-Buyer an "Estoppel Certificate" dated May 18, 2022, as required by Section 10.01(n) of the Contract.  (DE 18-8.)  The Estoppel Certificate certified, among other things, that Tenant Arcade was in good standing regarding the lease.  (Id.)  That said, on June 14, 2022, Chalpin-Seller received an email from its management company claiming that the Tenant Arcade was "moving everything out" of the Property.  (DE 18-13, p. 2.)  Chalpin-Seller's counsel then emailed Jersam-Buyer's counsel, informing them of its management company's email and that the Tenant Arcade failed to pay rent for June 2022.  (Id. at 1.)  Chalpin-Seller's counsel further stated in the email that "my client can no longer restate the representations of Section 4.02 as it pertains to the [Tenant] Arcade as they have failed to pay June 2022, Rent or Additional Rent and now appear to be abandoning/surrendering the Premises."  (Id.)

Section 4 of the Contract provides a "Representations of Seller" provision.  The end of this section states, "[t]he representations and warranties of Seller set forth in this Section 4 are made

as of the date of this Contract and are and shall be restated as of the Closing Date." (DE 1-1, p. 8, 11.) Section 4.02 says:

> Seller represents and covenants to purchaser as follows:
>
> . . . except as set forth in the Rent Schedule or as otherwise provided in this Contract:
>
>> (b) all of the Leases are in full force and effect;
>>
>> . . .
>>
>> (k) to Seller's actual knowledge, no tenant who is in actual possession as of the Effective Date under any Lease is in breach of any of its obligations under said Lease, and there exists no conditions which, with the giving of notice or the passage of time would constitute a breach by any tenant of its obligations under any Lease.

(DE 1-1, p. 8.) Relying on Chalpin-Seller's counsel's June 14, 2022, email, Jersam-Buyer sent Chalpin-Seller a Notice of Default. The notice stated, "[p]lease accept this letter as Buyer's notice of default to Seller as a result of Seller's inability to comply with Seller's Restatement Obligation and Buyer's demand that same be cured prior to the current 'Closing Date' of June 17, 2022." (DE 18-16, p. 3.) The Notice of Default also stated that "[i]n the event of Seller's failure to cure the foregoing defaults on or before the Closing Date, please accept this letter as notice of Buyer's election to terminate the Agreement pursuant to Section 13.04(a) thereof and Buyer's demand for the return of the Downpayment and the Seller's payment of its Actual Costs."[3] (Id.) After Jersam-Buyer claimed Chalpin-Seller failed to cure the defect cited, thus breaching the Contract, they sent a Notice of Termination on June 22, 2022, terminating the Contract, demanding the return of the down payment ($1,000,000), and demanding $20,000 for actual costs. (DE 7-3.) Chalpin-Seller maintains Jersam-Buyer had "no basis to use [Tenant Arcade's] actions to cancel the Contract[]"

---

[3]    Section 13.04(a) of the Contract provides "if Seller shall default in the performance of Seller's obligations under this Contract and such default is not cured within the earlier to occur of (i) five (5) days of Seller's receipt of written notice from Purchaser demanding same; or (ii) the Closing Date, Purchaser's sole and exclusive remedy shall be, and Purchaser shall be entitled to, either (a) terminate this Contract and receive (i) a return of the then Downpayment . . . ." (DE 1-1, p. 24.)

and "[Jersam-Buyer's] premature notice was an improper termination of the Contract." (DE 18, p. 8.) To that end, Chalpin-Seller, after notice, responded to Jersam by claiming Jersam-Buyer breached the Contract "for its failure to close on the scheduled closing date." (DE 18-18.) Furthermore, Chalpin-Seller objected to the release of the downpayment and demanded that it be held in escrow "pending a final [] Order of a Court." (Id.)

## LEGAL STANDARD

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. at 322. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation omitted). If the burden of persuasion at trial would be on the nonmoving party "a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex Corp., 477 U.S. at 324. "[T]he burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Id. at

325. "If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied . . . ." Id. at 332 (Brennan, J., dissenting).

Accordingly, once the movant has made this threshold demonstration, to survive the motion for summary judgment, under Rule 56(e), the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citation omitted). Under this standard, 'the mere existence of a scintilla of evidence' in favor of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." Wai Man Tom, 980 F.3d at 1037.

"Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." Jacobs v. N.C. Admin. Off. of the Courts, 780 F.3d 562, 568 (4th Cir. 2015) (quoting 10A Charles A. Wright et al., Federal Practice & Procedure § 2728 (3d ed. 1998)). "The court may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict. Therefore, courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." Variety Stores, Inc. v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted and alterations adopted). A court improperly weighs the evidence if it fails to credit evidence that contradicts its factual conclusions or fails to draw reasonable inferences in the light most favorable to the nonmoving party. See id. at 659-60.

**DISCUSSION**

This case centers on whether Jersam-Buyer's termination of the Contract was valid. If Chalpin-Seller defaulted on its obligations under the Contract, then Jersam-Buyer was entitled to terminate the Contract and receive a return of the Downpayment. (See DE 1-1, p. 24, §13.04.) At the same time, if Jersam-Buyer had no right to terminate the Contract, then its failure to appear on the TOE Closing Date puts it in default of the Contract and entitles Chalpin-Seller to terminate the Contract and retain the Down Payment as liquidated damages, among other remedies. (See id. at pp. 23-25, §13.03.) After a review of the record and the plain and ordinary language of the Contract, the Court finds Jersam-Buyer could not terminate the Contract, and so Chalpin-Seller is entitled to summary judgment.

Jersam-Buyer contends it validly terminated the Contract because Chalpin "could not meet its obligation to restate the representations and warranties made in Section 4 of the Contract as of the closing date (June 16, 2022) due to one of Seller's tenants [Tenant Arcade] failing to pay rent and said tenant's subsequent abandonment of the leased premises." (DE 17-1, p. 1.) Jersam points to the clause at the end of Section 4:

> The representations and warranties of Seller set forth in this Section 4 are made as of the date of the Contract **and are and shall be restated as of the Closing Date**.

(DE 17-1, p. 2; citing DE 1-1, p. 11.)[4] Jersam contends Chalpin admitted in the June 14, 2022, email that it could not restate as of the closing date its representations required Section 4.02(b) and

---

[4]    Jersam tries to frame this clause as a "Bring Down Provision." (See DE 17-1, pp. 10-12.); see also Bring-down Provision, Black's Law Dictionary (11th ed. 2019) ("A 'bring-down provision' is defined as '[a] contractual covenant that all of a party's representations and warranties were true when the contract was executed and will be true on the closing date.'"). Still, as shown by the case Jersam cites (which does not apply South Carolina law), Bring Down Provisions generally include an explicit contractual provision requiring a "Bring Down Certificate" at closing and are common in merger and acquisition transactions. See, e.g., Dermatology Assocs. of San Antonio v. Oliver St. Dermatology Mgmt. LLC, No. CV 2017- 0665-KSJM, 2020 WL 4581674, at *29 (Del. Ch. Aug. 10, 2020). As the Contract does not have a provision requiring a "Bring Down Certificate," the Court cannot interpret Section 4 to do the same. To do otherwise

Section 4.02(k).  (DE 17-1, p. 7.)  Section 4.02(b) provides that "all Leases were in full force and

effect[.]"[5]  (DE 1-1, p. 8.)  While Section 4.02(k) provides:

> to Seller's actual knowledge, no tenant who is in actual possession as of the
> Effective Date under any Lease is in breach of any of its obligations under said
> Lease, and there exists no conditions which, with the giving of notice or the passage
> of time would constitute a breach by any tenant of its obligations under any Lease.

(Id. at 9.)  Even so, Chalpin believes these provisions are not controlling.  Instead, Chalpin argues

Section 4.02 is limited in two ways.  First, Section 4.02 is further qualified by:  "except as set forth

in the Rent Schedule *or as otherwise provided in this Contract*[.]"  (DE 1-1, p. 8 (emphasis added).)

Chalpin contends other provisions in the Contract supersede Section 4.02(b) and (k).  (See, e.g.

id., Sections 5.01(b), 10.01(d) and (n), 12.02, and Exhibit 10.01(b).)  Second, Section 20.08 states,

"[i]f the provisions of any schedule or rider to this Contract are inconsistent with the provisions of

this Contract, the provisions of such schedule or rider shall prevail."  (Id. at 29.)  Chalpin contends,

"Schedule B, entitled 'Permitted Exceptions', which includes the Leases and Tenancies, prevails

over Section 4."  (DE 18, p. 6.)  And so, Chalpin points to several provisions in the Contract to

support its contention that Jersam "was not entitled to cancel the contract because it agreed to

accept title of the premises subject to the permitted exceptions of the leases and tenancies."[6] (DE

18, p. 17.)  That said, Chalpin claims Section 4 is "expressly superseded in Section 20.08 and,

---

would give the clause in Section 4 more legal significance than its ordinary and plain meaning.  See ERIE
Ins. Co. v. Winter Const. Co., 393 S.C. 455, 461, 713 S.E.2d 318, 321 (Ct. App. 2011) ("When the language
of a contract is clear, explicit, and unambiguous, the language of the contract alone determines the contract's
force and effect and the court must construe it according to its plain, ordinary, and popular meaning.").

[5]    After a review of the record, the Court finds no evidence that the Tenant Arcade's lease was not in
full force and effect at the time of the closing date, regardless of the Tenant Arcade's activity or failure to
pay rent for June.  Accordingly, any argument premised on Chalpin-Seller's inability to restate this
representation is erroneous and will not be addressed further.

[6]    For instance, Chalpin-Seller suggests that Sections 1.02 ("Sale of Premises and Acceptable Title"),
4.01 ("Representations of Seller"), 10.01(a), (j) ("Seller's Closing Obligations"), 3.01 ("The Closing"), &
5.01(b)(v) ("As Is" Condition; Representations and Warranties of Purchaser") support this premise.

thus, does not justify Defendant's repudiation of the Contract."[7]  (DE 18, p. 6.)  At any rate, Jersam

has not alleged a contractual default by Chalpin based on the marketability of the title or any issue

with an encumbrance.    Rather, the dispositive issue concerns Chalpin-Seller's contractual

obligations for representations and warranties.

To that end, the plain language of Section 4 provides a resolution for this dispute.  See

ERIE Ins. Co. v. Winter Const. Co., 393 S.C. 455, 461, 713 S.E.2d 318, 321 (Ct. App. 2011)

("When the language of a contract is clear, explicit, and unambiguous, the language of the contract

alone determines the contract's force and effect and the court must construe it according to its

plain, ordinary, and popular meaning.")  Although Section 4 states, "[t]he representations and

warranties of Seller set forth in this Section 4 . . . shall be restated as of the Closing Date[,]" Section

4.02 expressly limits Chalpin-Seller's representations in Subsections 4.02(b)-(l) to "*except* as set

forth in the Rent Schedule or *as otherwise provided in this Contract*."  (DE 1-1- pp. 8, 11 (emphasis

added).)  Since Jersam-Buyer identified Section 4.02 (b) and (k), if other provisions in the Contract

address these sections, they must prevail.  That said, Jersam-Buyer alleges Chalpin-Seller is in

default of the Contract for its inability to restate Section 4.02(k) at closing based on the undisputed

facts that (1) Tenant Arcade did not pay rent for June and (2) Tenant arcade "appear[ed] to be

---

[7]        The Court notes that Jersam-Buyer agreed to accept title of the Property subject to the "Permitted
Exceptions" in Schedule B, including the Leases and Tenancies listed in Schedule E to include Tenant
Arcade's lease.  See DE 1-1, p. 5, § 1.02 ("Seller shall convey and Purchaser shall accept title to the
Premises in accordance with the terms of this Contract subject to the matters set forth in Schedule B attached
hereto and made a part hereof (collectively, 'Permitted Exceptions')"); see also id. at 35, Schedule B,
Permitted Exceptions 14; id. at 53, Schedule E.  But, these provisions do not resolve the current dispute
because the "Permitted Exceptions" in Schedule B address encumbrances without creating any
*inconsistencies* for Section 20.08 to resolve.  South Carolina law defines an encumbrance as "a right or
interest in the land granted 'which may subsist in third persons to the diminution in value of the estate
although consistent with the passing of the fee.'" Jericho State Cap. Corp. of Fla. v. Chicago Title Ins. Co.,
431 S.C. 437, 446, 848 S.E.2d 572, 576 (Ct. App. 2020) (citation omitted).  Additionally, an encumbrance
"is any interest in a third person consistent with a title in fee in the grantee, if such outstanding interest . . .
constitutes a burden or limitation upon the rights of the fee title holder.  Id. (citing 21 C.J.S. Covenants §
18 (2020)).

abandoning/surrendering the Premises." (DE 18-13.) First, the Contract provides a remedy if any tenant fails to pay rent through the Closing Date in Section 12.02:

> If any tenant is in arrears in the payment of Rent or Additional Rent that has accrued up to and including the Closing Date ("Arrears"), then Seller shall retain full right, title and interest in the Arrears and may pursue such tenants for repayment of the Arrears after the Closing Date. The Purchaser forever waives and relinquishes any right title or interest in the Arrears. The Seller shall have no right to receive any future rental payments from any tenant after the Closing Date. In the event any Tenant delivers funds to Purchaser after Closing for payment of the Arrears, then Purchaser agrees to promptly turn over any such payment of Arrears to the Seller. The provisions of this paragraph shall survive the Closing.

(DE 1-1, p. 21.) Accordingly, because this issue is addressed "as otherwise provided in the Contract," Chalpin-Seller has no duty to restate Section 4.02(k) at closing for Tenant Arcade's failure to pay rent in June.

Second, the Contract otherwise provides for tenant abandonment of the Property, so Chalpin-Seller had no duty to restate Tenant Arcade's tenancy at closing. To begin with, the record does not support a finding that Tenant Arcade's lease was not in full force and effect or had breached its obligations. Instead, the record shows it was terminating its operations. Still, the Contract otherwise provides two provisions regarding occupancy and the status of any leases: Exhibit 10.01(o) Tenant Estoppel (DE 18-8, p. 57-58) and Section 5.01 (DE 1-1, p. 11-13). When read together, the Contract provides that "[a]t the Closing, Seller shall deliver the following to Purchaser . . . (n) An Estoppel Certificate, signed by each tenant under a Lease in the [] form annexed hereto at Exhibit 10.01([o])." In addition, Section 5.01, "As Is" Condition; Representations and Warranties of Purchaser provides,

> (b) . . . Except as expressly provided in this Contract, Seller has not made and does not make any representation, warranty, guaranty or statement as to . . . (v) the compliance of the Premises or the Leases and/or the Tenancies or use of the Premises or any portion thereof with the any law, rule, regulation, code or governmental order of any governmental authority, *or any other matter regarding the status of the Leases or the rental being paid by the tenants thereunder,*

including, without limitation, whether or not same is subject to rent control, rent stabilization or other governmental rental regulation or legality of rent charge . . . .

(DE 1-1, p. 12, § 5.01(b) (emphasis added).)  The Estoppel Certificate provides: "Subject to the Confirmed Plan, the Lease is presently in full force and effect according to its terms and is the valid and binding obligation of Tenant."  (DE 18-8, ¶ 3.)  It also provides that "Tenant is in possession of the Premises and is fully obligated to pay and is paying the rent and other charges due under the Confirmed Plan and, subject to the Confirmed Plan, will be fully obligated to perform and is performing all of the other obligations of Tenant under the Lease."  (Id. ¶ 6.) Furthermore, Section 5.01(b), even with its limiting language ("Except as expressly provided in this Contract"), must be read alongside the Estoppel provision.  That provision expressly disclaims any representation  "regarding the status of the Leases or the rental being paid by the tenants . . . ."[8]  (DE 1-1, p. 12.)  Accordingly, because any issue about the status of any leases is "otherwise provided in the Contract," Chalpin-Seller does not have to restate Section 4.02(b) or (k) at closing for Tenant Arcade's "appearance of" abandoning the Property.

Thus, the Court finds that Jersam-Buyer's Notice of Termination dated June 15, 2022 (DE 18-16), was not a valid termination of the Contract.  Accordingly, Jersam-Buyer's failure to appear at the TOE Closing Date was a default of its obligation under Section 13.03, entitling Chalpin-Seller to terminate the Contract and retain the Down Payment as liquidated damages.

---

[8]    Chalpin-Seller also points to Contract Exhibit 10.01(b), Assignment and Assumption of Leases, as another provision that otherwise controls the restatement of Section 4.02.  (DE 1-1, p. 54.)  Exhibit 10.01(b) says in part:

As of the Effective Date, Assignee hereby accepts such assignment of the Leases and Security Deposits and agrees to be bound by, and to keep, observe and perform, the terms, covenants and conditions of the Leases.  Except as expressly set forth herein, this Assignment and Assumption of Lease *is made without any covenant, warranty or representation by, or recourse against, Assignor*, of any kind whatsoever.

(Id. (emphasis added).)  The Estoppel Certificate, Section 5.02(b) "As Is" clause, and the Assignment provision are Contract provisions that supersede Section 4.02.

## **CONCLUSION**

Accordingly, the Court grants Plaintiff's Motion for Summary Judgment (DE 16) and denies Defendant's Motion for Summary Judgment (DE 17).

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

September 26, 2023
Florence, South Carolina